Baldwin, J.
I agree with Judge Allen, that where goods are consigned to a factor, to be sold by him and the proceeds accounted for, and advances are made by the factor to the consignor, such advances must be considered as made upon the joint credit of the consignor and the goods. And I think, therefore, if it appears the fund so placed in the hands of the factor is not available, as if the goods be unsaleable, or have been sold by the factor on time to persons in good credit, and the period of payment has not arrived, or the purchasers have become insolvent, the factor may waive his lien upon *165 the fund, and resort to the consignor for reimbursement of his advances. But I cannot agree that the factor-may recover back his advances, without shewing what has become of the goods. He cannot hold on to the fund and at the same time maintain an action for his advances : much less can he do so after he has sold the goods and received the proceeds. And in this case, it appears from the plaintiffs’ own shewing, that they have sold the goods and credited the proceeds against the 10,000 dollars advanced by them j and it is only for the balance so made that they have brought their action. If the plaintiffs could recover upon the mere fact of the advance made by them, without regard to the fund in their hands, then it follows that they might do so as to the whole, instead of a part only, and throw the defendant upon the necessity of proving, by way of set off, or in a distinct action to be brought by him, the sale of the goods and the amount of the proceeds received, though the fact of the consignment appears by the same evidence that proves the advance made thereupon. Such a proposition would, I think, be extremely unjust and unreasonable, and is not warranted, it seems to me, by the cases cited.
Peisch v. Dickson, 1 Mason’s R. 9, was an action brought by a merchant against his factor, to recover a balance alleged to be due on sundry consignments made to him by the plaintiff; in which the defendant claimed to be allowed in account, the difference between a sum advanced upon one of the consignments, and the net proceeds of the goods. There was no dispute about the facts, and the only question was, whether, upon the construction of a written contract, the factor had not agreed to look to the goods only, waiving any resort to the person of the consignor: and it was held that he had, the Court saying: “ By the general law, a factor has the security of the person as well as a lien upon the goods of his principal, for all advances made on them; but he *166 may waive his right to resort to the person, and if he does so by an express agreement, it will be binding upon him.” This was the whole case, and there is nothing in it to countenance the idea, that the factor was not bound to shew how he had disposed of the goods.
Burrill v. Philips, 1 Gal. R. 360, was an action brought by a commission merchant, with whom the defendant had deposited certain cotton for sale. The cotton was sold on a credit of four months, and a note taken for the amount, and before it became due the purchaser failed : and the action was brought to recover the amount of certain advances made by the plaintiff to the defendant on account of the cotton. One of the questions was, whether the advances were made exclusively on the credit of the fund, without recourse to the principal. This, the Court said, was a mere question of evidence, and an agreement to that effect would in point of law be valid, but was not to be inferred from the mere relation of principal and factor; and that “ advances between them are considered by the general law as made on the joint credit of the fund and the party; and the factor may relinquish his lien on the fund, without at all affecting his personal remedy.” In that case, too, as well as the one before noticed, it will be seen that the evidence shewed what disposition had been made of the goods; and it is no authority to prove that the factor can recover his advances, in the absence of all evidence on that subject.
Beckwith v. Sibley, 11 Pick. R. 482, was an action brought by commission merchants, to whom the defendants had made several shipments of cotton, to be sold by the plaintiffs, but at the risk of the defendants. It appeared from the evidence that the cotton was sold to persons in good credit, for their negotiable notes payable to the plaintiffs, or their order; that the defendants, whenever they made a shipment, drew bills upon the plaintiffs, without waiting for the sales or the avails of *167 them, and these drafts were accepted and paid; and that the plaintiffs had advanced on the defendants’ drafts a much larger sum than they had realized from the notes of the purchasers. None of the notes were negotiated ; and the accounts current were made a part of the case. The action was commenced before any of the notes had fallen due, but not until after the failure of the makers, and the question was, whether suit had not been prematurely commenced: And the Court held that it had not, there being no proof that the plaintiffs relied exclusively upon the fund, or had agreed to await their reimbursement until the same was realized, or had failed; that the defendants were indebted to the plaintiffs for money due presently, and had a lien on the cotton before the sale, and on the notes taken for it, after the sale, as security for the debt due them ; and although they took those notes in their own name, it was in trust for the consignors ; the property in the notes remained beneficially in the defendants, and the plaintiffs had only a lien. Thus it will be seen that it did appear in evidence how the fund had been disposed of, and that it was rendered unavailable by the failure of the purchasers; and the decision of the Court was merely, that the factors were not bound to wait until the notes fell due. If it had not appeared that the fund was unavailable, or not presently available, and especially if it had appeared that the plaintiffs had sold for cash, or collected the notes from the purchasers, there is nothing in the decision to indicate that the Court would have held that the plaintiffs might hold on to the fund, and at the same time recover their advances. Indeed, the case is founded upon the idea of a waiver by the plaintiffs of any resort to the fund at all, and their turning it over to the defendants.
In Corlies v. Wedderfield, 6 Cow. R. 181, the Court refer to the case in 1 Gallison, and recognize the proposition that a factor advancing money, and having goods *168 in his hands, is not confined in his remedy for advances to the mere fund deposited, but gives a joint credit to the fund and person of his principal; but add that from the nature of such a contract, resort must first be had to the fund, if that can be made available.
It is true, in the language of the Court in Beckwith v. Sibley, that “ where a creditor has collateral security for his debt, he is not confined to rest exclusively upon such security for repayment; but notwithstanding the pledge or collateral security, may look to the general credit of his debtor. But I apprehend that where the security consists of goods in the hands of the creditor, which it has been made his duty to sell and account for, it must appear in his action against the debtor what has become of the fund, as it did appear in Beckwith v. Sibley. It would be oppressive if the creditor were permitted, at the same time, to realize the fund and recover his advances; and in the case of a factor, who has, of course, a knowledge of his own proceedings in relation to the fund, a rule enabling him to throw off the whole burthen of allegation and proof, in regard to what he has done, would, it seems to me, work badly in practice.
I think, therefore, that this case turns upon the question, whether the account of sales returned to the defendant by the plaintiffs, is prima facie evidence for them of the proceeds of the tobacco; and it seems to me that it is. I take it to be correct as a general proposition that in the case of a factor, agent, trustee or executor, whose duty it is, by law or by contract, to sell and account for the proceeds of goods in his hands, and who makes a due return of his sales to the proper person, or the proper custody, he may rely upon the same as prima facie evidence in his favour; inasmuch as he is bound not only to sell, but to keep and render an account of his sales. It is for the benefit of persons interested in the proceeds that this duty should be performed, and when performed, it is unreasonable that *169 they should have the power of rendering it wholly nugatory, and throw upon the agent, &c. the task of furnishing evidence in relation to the transaction, which may involve minute details difficult of proof. This might be illustrated by numerous examples: a few will suffice. Take the case of a merchant who employs an agent to manage entirely a distant mercantile establishment for him; would not the books kept by that agent of his dealings with customers, be prima facie evidence for him, though liable to be rebutted by proof of fraud or mistakes ? Or the case of an executor who returns a bill of his sales of the personal estate of his testator. Or of a drover employed to sell according to his discretion, cattle or horses for another. And what would be the condition of commission merchants, if they were required to be at all times, within the period of statutory limitation, prepared with evidence to prove the terms of sale of all the property consigned to them in the course of their business ?
I concur in affirming the judgment of the Circuit Court.
Allen, J. This was an action of assumpsit; the declaration contained the common counts for money laid out and expended, money had and received, and upon an account stated. The defendant pleaded the general issue, and, it is stated, filed an account of payments and set offs. That account is not in the record, or made a part thereof by any exception. At the trial the defendant in the Court below filed a bill of exceptions to decisions of the Court overruling a motion of the defendant to give two instructions to the jury, and for giving the instruction which it did. There is nothing in the bill of exceptions shewing that the defendant was entitled to the instructions asked for. It merely states that the plaintiffs proved that they had made an advance of 10,000 dollars to the defendant upon a shipment of 130 *170 hogsheads of tobacco consigned by him to them, to be sold upon his account; that they rendered an account of sales, from, which it appeared that the defendant became indebted to them in the sum of 1306 dollars: but there was no proof of the account of sales, except that the plaintiffs’ agent presented it to the defendant, who immediately objected to the same. Whereupon the defendant moved for the instructions set out in the bill of exceptions. 1st. That the account of sales so rendered and objected to, was not evidence of the sales of the tobacco as therein stated, but that if the defendant proved he had shipped the 130 hogsheads of tobacco to the plaintiffs, and that the same was of greater value in the market where it was sold than the 10,000 dollars advanced thereon and charges and expenses, then the plaintiffs could not recover. 2d. That as the sum of 10,000 dollars was an advance on the shipment, if the jury should believe from the evidence that the intention of the parties and the usual course of business, required that the tobacco should be sold by the plaintiffs before they could demand their advance of the defendant, then they could not recover any part thereof, without proving that the tobacco had been actually sold by them, and that the defendant had credit for the net amount of the sales. As the bill of exceptions does not state that any proof was offered tending to prove that the tobacco was of greater value in the market where it was sold, at the time of sale, than the sum advanced and charges and expenses, or any evidence tending to establish a special contract between the parties, by which the consignee was to look to the property consigned for indemnity in the first instance, the Court was asked to give instructions upon a mere hypothetical state of facts; and on that ground alone was justified in refusing to give them.
But it seems to me the defendant has proceeded upon a misconception of the character of the plaintiffs’ demand, and in consequence of that, has asked for instruc *171 tions not bearing upon the case as stated. The account rendered is not the foundation of the action ; the plaintiffs do not seek a recovery upon the footing of a stated account alone. They proved they had made an advance to the defendant of 10,000 dollars. How it was made does not appear; probably the defendant upon the faith of the consignment of tobacco, drew bills upon the plaintiffs, which were accepted and paid. The statement that the 10,000 dollars was advanced upon a shipment of tobacco consigned to the plaintiffs, to be sold on account of the defendant, does not prove that they relied exclusively on that fund, or were to wait until it was sold and realized. As soon as the plaintiffs advanced the 10,000 dollars out of their own funds, for the defendant at his instance, he became a debtor for the amount, and immediately liable to their action. By the general law, the factor has the security of the person, as well as a lien on the goods of his principal, for all advances made on them ; but he may waive his right to resort to the person, and if he does so by express agreement, it will be binding on him. Peisch v. Dickson, 1 Mason’s R. 9. And in Burrill v. Philips, 1 Gallison’s R. 362, “ It is said to be a mere question of evidence, whether advances were made upon the credit of the fund exclusively, without recourse to the principal. There may be an agreement between the parties which shall have that effect; and such agreement would be valid. But such an agreement is not legally to be inferred from the more relation of principal and factor. Advances between them are considered by the general law as made on the joint credit of the fund and the party, and the factor may relinquish his lien on the fund without at all affecting his personal remedy. When, therefore, a party sets up such an agreement, as it is in derogation of the general law, he is bound to make out in proof the agreement; and no presumptions of law arise in his favour.” The question in each of the cases *172 referred to, was, whether there was not an understanding or agreement between the parties that the advances were made exclusively upon the credit of the fund. But the general doctrine is stated and relied on, in which all the books seem to concur, that by the general law, advances by factors are considered as made upon the joint credit of the fund and the party. Whilst the consignee retains possession of the subject, he has a lien for his indemnity, but parting from his lien does not affect his personal remedy. The lien is a collateral security; but where a creditor has a collateral security for his debt, he may notwithstanding look to the general credit of his debtor and have his action. And an agreement to give time, or look to a particular fund, is not to be inferred from the mere relation of consignor and consignee. The case which most resembles the point under consideration, is Beckwith v. Sibley, 11 Pick. R. 482. There the owner of goods on consigning them to a commission merchant for sale, drew bills on the consignee, which were accepted and paid, and the consignee, on selling the goods, took notes of the purchasers, payable to himself or order, but before the notes fell due, the purchasers became insolvent. It was held that prima facie a right of action accrued to the consignee immediately upon his making advances to the consignor, notwithstanding he had a lien on the notes as security for the debt due him; and that the burden of proof was upon the consignor to shew an agreement not to commence an action until the notes should have fallen due and been dishonoured.
The case is almost identical in principle with the present, in reference to the question under consideration. There the owner of goods, on consigning them to the commission merchant for sale, drew bills on the consignee. Here the whole proof is, that the plaintiffs made an advance of 10,000 dollars to the defendant upon a shipment of tobacco consigned to the plaintiffs by him, to be sold on his account. And here, as there, *173 in the absence of any evidence proving or tending to prove an agreement to look to the fund in the first instance, a right of action accrued to the consignee to recover his advances ; and such agreement cannot be implied from the mere relation of principal and factor.
The plaintiffs, then, as it seems to me, according to these authorities, upon the proof of the advances for the defendant, made out their case. If the defendant intended to rely on any want of care, skill or diligence, in consequence of which he was injured, the burthen of proof was on him ; and the Court very properly refused to give instructions upon a mere conjectural state of facts, of which it does not appear any proof was offered or tendered; and so in regard to the understanding or intention of the parties. After refusing the instructions asked for, the Court proceeded to instruct the jury, that while the plaintiffs were bound to sell the tobacco and account to the defendant for the net proceeds of sales, yet their account of such sales so rendered and filed was prima facie to be presumed correct, leaving the defendant to falsify and impeach the same if he could. To this instruction the defendant can have no valid objection as the case was presented. The action being, not for a balance appearing due upon the account as a stated account. The fact that the defendant objected to the account when first presented to him, can have no bearing on the case. The plaintiffs upon the proof of their advances, and without reference to the account, had made out their ease ; and the account merely served to shew how much the advance was reduced by the proceeds of the tobacco sold. This did not preclude the defendant from shewing he was entitled to additional credits; nor does the instruction say so. The account was to be taken as shewing the true amount of credits until it was falsified ; but unless it was so falsified the plaintiffs were entitled to recover the amount of their advances, reduced by the credits exhibited. So *174 far the evidence was for the benefit of the defendant. The doctrine in relation to stated accounts has no application to the case as made by the bill of exceptions. It is part of the legal obligation of factors to render accounts, and under certain circumstances, an account so rendered becomes evidence in favour of the party rendering it. But as in this case the plaintiffs’ cause of action was made out by proof independent of the account, the only effect it could have, in the absence of all other testimony, was to shew the true balance claimed by the plaintiffs ; and this was for the benefit of the defendant. If no account had been exhibited, the burthen of proof would have been on the defendant to shew a consignment of the tobacco and its value, or a special agreement to look to the fund in the first instance; and from this defence he was not precluded by the instruction that the account of sales was to be deemed prima facie correct.
I think the judgment should be affirmed.
Cabell, P. This was an action of indebitatus assumpsit, brought by Nottebohms v. Mertens, for moneys lent and advanced to, and laid out, paid and expended for the defendant, at his instance and request. At the trial, it was proved by the plaintiffs, that they had advanced to the defendant 10,000 dollars on a shipment of one hundred and thirty hogsheads of tobacco, consigned by him to them, to be sold on his account; and that they had rendered to him an account of the sales thereof, from which it appeared that he was indebted to them in the sum of 1306 dollars. And it appears from the declaration in the cause, that it was for the precise sum of 1306 dollars, indicated by the said account as the balance due to the plaintiffs, that the suit was brought.
It cannot therefore be necessary to discuss the question, whether it would have been competent to the plaintiffs to sue for and recover the whole of the sum ad *175 vanced by them to the defendant, without proof of any special contract that the money was advanced solely on the personal credit of the defendant, and without shewing what had become of the tobacco, on the consignment of which the money had been advanced. No such question arises in this case. For the plaintiffs had rendered an account shewing the disposition of the tobacco ; and the suit was brought only for the excess of the advance made by the plaintiffs, over and above the net proceeds of the tobacco.
The only question presented by the bill of exceptions is, as it seems to me, whether the account of sales rendered by the plaintiffs, and objected to by the defendant at the time it was rendered, is to be regarded as prima facie evidence of the fairness and correctness of the sales. I am of opinion that it is so.
The relation of consignor and consignee imposes important duties on the consignee, the duo performance of which requires diligence, skill and integrity. One of these duties is to render to his principal a fair and just account of the sales of the property consigned to him. It is the consignor himself who selects and appoints the consignee; and this selection and appointment implies high confidence on the part of the consignor, in the diligence, skill and integrity of the consignee. The necessary result of this obligation to render an account of sales, on the part of the consignee, and of this confidence reposed on the part of the consignor, on the character and qualifications of the consignee, is to attach to the account when rendered, some degree of faith and credit. Now, what faith or credit can be given to it, if it be not regarded even as prima facie evidence ? Propriety, justice and convenience require that it should be thus regarded; leaving it, however, to the consignor to impeach it, by proof of any circumstance calculated to shew its unfairness. This is all that the Court below has done. And I am of opinion to affirm its judgment.
*176 It may not be improper to observe, that the doctrine of stated accounts, between merchant and merchant, has no application to this case. The efficacy of a stated account between merchant and merchant, is founded on the supposed acquiescence in its justice, on the part of him to whom it is rendered, as shewn by his long failure to object to it. The faith and credit given to an account of sales rendered by a factor or consignee, is founded on the obligation of the factor or consignee to render a fair and just account, and on the original confidence reposed by the consignor in the diligence, skill and integrity of the factor or consignee.
Judgment affirmed.