## Richmond

# STATE BOARD OF HEALTH, et al. v. CHIPPENHAM HOSPITAL, INC.

June 9, 1978

Record No. 770279

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Harman and Compton, JJ.

*James E. Ryan, Jr., Deputy Attorney General (Anthony F. Troy, Attorney General,* on brief) for appellants.

*H. Merrill Pasco (Virginia H. Hackney; Hunton & Williams,* on brief) for appellee.

HARRISON, J., delivered the opinion of the Court.

Chippenham Hospital, Inc. instituted a declaratory judgment proceeding in the court below to test the constitutionality of Section 32-211.16 of the Code of Virginia, commonly known as the "Staff Privileges Section" of the Medical Care Facilities Certificate of Public Need Law. This section is part of an Act of the General Assembly of Virginia, approved March 19, 1973 (1973 Va. Acts ch. 419), adding to Title 32 a chapter numbered 12.1 containing sections numbered 32-211.3 through 32-211.16. Chippenham alleges it is unconstitutional because (a) it violates Article IV, Section 12 of the Constitution of Virginia, and (b) as written and applied in this case, it violates Article I, Sections 1 and 11 of the Constitution of Virginia and the Fourteenth Amendment of the Constitution of the United States. The trial court held that the inclusion of §32-211.16 as a part of the Act violates Article IV, Section 12 of the Constitution of Virginia, in that the Act thereby embraces more than one object and the object of the section is not expressed in its title. The court rejected Chippenham's allegations that the section violates its rights of due process and of equal protection.

The State Board of Health, the State Health Commissioner, and

the Attorney General of Virginia seek a reversal of the judgment of the lower court that the statute violates the Constitution of Virginia. Chippenham assigns cross-error to the action of the lower court in holding that the section in controversy did not violate its constitutional rights of due process and of equal protection as written and applied to the Hospital by appellants.

Article IV, Section 12 of the Virginia Constitution provides, in part, that: "No law shall embrace more than one object, which shall be expressed in its title." Chippenham alleges that the Staff Privileges Section violates this constitutional mandate because it involves an entirely separate object than the remainder of the Medical Care Facilities Certificate of Public Need Law, hereinafter referred to as the Law, and because the object is not expressed in the title to the Law.

The title of Chapter 419 of the 1973 Acts of the Geneal Assembly, approved March 19, 1973, creating the Hospital Public Need Law (the Law), reads as follows:

"An Act to amend the Code of Virginia by adding in Title 32 a chapter numbered 12.1, containing sections numbered 32-211.3 through 32-211.16 so as to create the Hospital Public Need Law; to declare the policy of the Commonwealth thereto; to make certain definitions; to prohibit the establishment or operation of hospitals without a certificate of public need; issuance of such certificate; providing for reviews and appeals; injunctions and penalties for violations."

The purpose of the Law is expressed in detail in Code §32-211.4, which provides:

**"Findings of General Assembly. -** The General Assembly finds that the unnecessary construction or modification of medical care facilities increases the cost of care and threatens the financial ability of the public to obtain necessary health, surgical, and medical services. The purpose of this chapter is to promote comprehensive health planning in order to help meet the health needs of the public; to assist in promoting the highest quality of health care at the lowest possible cost; to avoid unnecessary duplication by insuring that only those medical care facilities which are needed will be constructed; and to provide an orderly administrative procedure for resolving questions concerning the necessity of construction or modification of medical care facilities. Therefore, in the exercise of the sover-

eign powers of the Commonwealth to safeguard and protect the public health and general welfare of its citizens, the General Assembly declares that it is the public policy of the Commonwealth of Virginia to encourage, foster, and promote the planned and coordinated development of necessary and adequate health, surgical, and medical care facilities and that such comprehensive health planning and development shall be accomplished in a manner which is coordinated, orderly, timely, economical, and without unnecessary duplication of services and facilities. (1973), c. 419.)"

With the exception of the Staff Privileges Section, all sections of the Law are admittedly germane to and directly concern its stated object, the prevention of the unnecessary construction or modification of health care facilities in Virginia. They relate to construction of "medical care facilities" and to "projects'. The thrust of the Law, apart from the one controversial section, is to require that a public need for hospital beds, and other medical facilities, be identified before any construction is undertaken. "Medical care facilities" is defined in the Law as meaning "any institution, place, building or agency . . . by or in which facilities are maintained, furnished, conducted, operated, or offered for the prevention, diagnosis or treatment of human disease, . . . including, but not limited to, general hospitals, sanatorium, sanitarium, nursing home, intermediate care facility, extended care facility, health maintenance oganization, mental hospital, mental retardation facility and other related institutions and facilities. . . ." Code §32-211.5(6). Throughout the Act frequent reference is made to "project", and the word is defined as "a capital expenditure, which under generally accepted accounting principles, is not properly chargeable as an expense of operation and maintenance. . . ." Code §32-211.5(7). Only the final paragraph and section dealing with the hospital staff is involved in this litigation, and it provides as follows:

"**§32-211.16. Denial, etc., to duly licensed physician of staff membership of professional privileges in licensed hospital an improper practice in certain circumstances; suspension or revocation of hospital's license for such practice.** - It shall be an improper practice for the governing body of a hospital which has twenty-five beds or more and which is required by State law to be licensed to refuse or fail to act within sixty (60) days of a completed application for staff

membership or professional privileges or deny or withhold from a duly licensed physician staff membership or professional privileges in such hospital, or to exclude or expel a physician from staff membership in such hospital or curtail, terminate or diminish in any way a physician's professional privileges in such hospital, without stating in writing the reason or reasons therefor, a copy of which shall be provided to the physician. If the reason or reasons stated are unrelated to standards of patient care, patient welfare, violation of the rules and regulations of the institution or staff, the objectives or efficient operations of the institution, or the character or competency of the applicant, or misconduct in any hospital, it shall be deemed an improper practice. Such improper practice shall constitute grounds for suspension or revocation of license issued pursuant to chapter 16 (§32-297 et seq.), Title 32 of the Code. The provisions of this section will not impair or affect any other right or remedy of the State. If the license is suspended or revoked on any of the above grounds, the hospital may appeal the decision of the Board to the circuit court of the county or city in which the hospital is located within thirty (30) days after the decision. (1973, c. 419.)"

The Attorney General points to the background of Virginia's health care system to show that the purpose of the Staff Privileges Section is germane to the Law. It is a matter of common knowledge that following World War II the health care field throughout the United States experienced an era of rapid growth and expansion. The advent of the Hill-Burton Program, private hospitalization-insurance plans, and the Medicare and Medicaid Programs resulted in tremendous hospital construction and expansion in Virginia. This caused such an over-expansion that in recent years there have existed hundreds of empty beds on any given day in many parts of the state, including the greater Richmond area. Appellant relies upon the testimony of Dr. Mack I. Shanholtz, former Health Commissioner of Virginia. Shanholtz testified that the operation costs of each vacant hospital bed are two-thirds as much as those of an occupied bed, a situation which, according to this witness, demands control if the cost of health service is to be prevented from soaring beyond the reach of persons who need health care. He also stated that it was the desire to control the escalating cost of health care without diminishing the quality of that care that prompted the enactment of the Certificate of Public Need Law.

Dr. Shanholtz further testified that there was a need for an open staff requirement to be written into the Law. He referred to the unique relationship of trust between patient and doctor, the mobility of our population and the necessity that a doctor be able to move his practice with his patients in order to continue serving them. This witness also said, in support of the open staff requirement statute, that a doctor who has treated his patient and has knowledge of his or her medical history, is in a better position to continue to treat him or her than would be a physician who has never before seen the patient.

Further reference to the testimony given in this case by numerous physicians and others for appellants and appellee is unnecessary. It suffices to say that the record shows the issue of open staff versus closed staff to be a controversial one, and an issue about which physicians, hospital administrators and boards of trustees of hospitals feel very strongly. However, the dispositive issue in this case is one of state constitutional law.

The Commonwealth maintains that the Medical Care Facilities Certificate of Public Need law embraces one subject, that is, comprehensive health care planning designed to avoid unnecessary duplication and cost so that the highest level of health care is provided to the citizens of Virginia at the lowest possible cost. It says that the contested portion of the Law, which delineates alleged improper practices in the area of staff privileges, is germane to, and an integral part of the overall subject of regulating health care in the vital interest of the patient public.

Chippenham says that the regulation of health care is not the subject of the Law. It says that according to the title of the Law its purpose is solely "to prohibit the establishment or operation of hospitals without a certificate of pubic need"; that this is a very specific title; and that every substantive section of the Law is germane to that specific purpose except the last paragraph dealing with staff privileges, a paragraph it says is wholly unrelated to hospital constructon.

In *Fidelity Ins., &c., Co.* v. *S.V.R.R. Co.*, 86 Va. 1, 6, 9 S.E. 759, 761 (1889), we said:

> "When the title is general, as it may be, all persons interested are put upon inquiry as to anything in the body of the act which is germane to the subject expressed; but when that title is restrictive, and confined to a special feature of a

particular subject, the natural inference is that other features of the same general subject are excluded.

"'As the legislature,' says Judge Cooley, 'may make the title to an act as restrictive as they please, it is obvious that they may sometimes so frame it as to preclude many matters being included in the act which might with entire propriety have been embraced in one enactment with the matters indicated by the title, but which must now be excluded because the title has been made unnecessarily restrictive.' Nor can the courts, he adds, 'enlarge the scope of the title; they are vested with no dispensing power; the constitution has made the title the conclusive index to the legislative intent as to what shall have operation. It is no answer to say that the title might have been made more comprehensive, if, in fact, the legislature have not seen fit to make it so.' (Cooley, Const. Lim., 149.)"

The parties are in agreement on the general principles of construction which must be used in disposing of the issue presented. Acts of the General Assembly enjoy a presumption of constitutionality both as to their title and text. Appellants' argument in the instant case was summarized by Justice Holt in *Commonwealth* v. *Dodson,* 176 Va. 281, 305-06, 11 S.E.2d 120, 131-32 (1940), where, after repeating the constitutional inhibition that no law shall embrace more than one object which shall be expressed in its title, he said:

"Its constructon must be liberal and because of this statutes are not to be declared unconstitutional unless that conclusion is inevitable. . . .

* * *

"All of this we reaffirmed in the late case of *West Bros. Brick Co.* v. *Alexandria,* 169 Va. 271, 192 S.E. 881, where it is said:

"'If the title be not misleading and if those things are done which are germane to it, that is enough. This constitutional provision was intended to prevent the insertion of rights or reservations which cannot bear the light of public scrutiny and which, if uncovered, would not be tolerated. Where this is done that provision should be enforced to the letter.'"

Chippenham contends that the regulations under which physicians are granted staff privileges do not contribute to the identification of public need for hospital facilities, nor to the reduction of

health care cost. It stresses the fact that neither Dr. Shanholtz nor the sponsors in the General Assembly of the original bill included a Staff Privileges Section at the time it was introduced, or at the time it passed the Senate. It was while the bill was making its way through the House of Delegates that the Staff Privileges Section was added by amendment at the end of the bill.[1] Appellee argues that this fact dilutes the strength of the testimony given by Dr. Shanholtz in support of the disputed section. It further argues that, of the twenty-four states which have enacted certificates of need legislation, only one contains any provision comparable to the Staff Privileges Section.

No good purpose would be served here by an examination of the various cases cited by appellants and appellee in support of their respective positions. Because of the very nature of Article IV, Section 12 of the Constitution of Virginia, each case must necessarily "stand on its own bottom". In each instance we must look to both the body and to the title of the Act of the General Assembly under scrutiny and find from its language if the Act embraces more than one object and if that object is expressed in its title. A cursory examination of the cases decided by this Court will show that we have been exceptionally liberal in determining whether a law contains more than one object in contravention of the Virginia Constitution. In *Fallon Florist* v. *City of Roanoke,* 190 Va. 564, 58 S.E.2d 316 (1950), we said that although many things of a diverse nature are authorized or required to be done in the body of the Act, though not expressed in its title, such is not objectionable "if what is authorized by the [A]ct is germane to or in furtherance of the object expressed in the title, or has a legitimate and natural association therewith". 190 Va. at 587, 58 S.E.2d at 327. There, the questioned provision was one relating to the duties of vendors

---

[1] The Medical Care Facilities Certificate of Public Need Law originated in the General Assembly of Virginia as Senate Bill No. 108, offered January 20, 1972. The bill's title then read: "A BILL to amend and reenact §§ 32-299 and 32-305 of the Code of Virginia, relating to the licensing of hospitals and additions or alterations thereto." The bill, together with its title, was amended in Committee. As amended it was passed by the Senate on February 29, 1972, and sent to the House of Delegates where it was continued to the 1973 Session. Its title then read: "A BILL to amend and reenact §§ 32-299 and 32-305 of the Code of Virginia, and to amend the Code of Virginia by adding a section numbered 32-305.1 the amended and added sections relating to licensing and construction of hospitals and additions or alterations thereto." At the 1973 Session, various amendments and changes occurred in the House before a "Committee Amendment in the Nature of a Substitute for Senate Bill No. 108" was passed by that Body on February 16, 1973, and by the Senate on February 19, 1973. The bill finally emerged with its title as heretofore stated.

affixing tax stamps to merchandise sold, and we held that this was also related to the tax levied by the statute and that the title of the city's ordinance was sufficiently broad to satisfy the Virginia constitutional requirement.

In *County Bd. of Sup'rs* v. *Am. Trailer Co.*, 193 Va. 72, 75, 68 S.E.2d 115, 118 (1951), we held that a statute, which had as its stated object the regulation of trailer camps to protect public health, safety and welfare, could not contain the unrelated object of a tax imposed on trailer camps to raise revenue, and said:

> "Clearly we think this was only a regulatory act and authorized only a regulatory ordinance. The title of the act, as noted, states its purpose. The body of the act emphasizes that its purpose is to authorize ordinances 'to regulate' the location and operation of trailer camps, 'to protect the health, safety and welfare' of the public. The tax permitted is a tax upon the license so authorized. There is nothing in the title or in the body of the act to suggest that a revenue measure was intended. The object of an act is required to be expressed in its title. Constitution of Virginia, § 52. The object expressed in this title is regulation and the body of the act repeats that its purpose is regulation. What is authorized by an act should be germane to the object expressed in its title. [Citation omitted.] It is wholly inconsistent with the language of the title and of the act itself to say that in addition to its expressed object to regulate, it was intended also to provide a revenue measure for general county purposes."

In the instant case we find nothing in the title to the Medical Care Facilities Certificate of Public Need Law to suggest that it included a provision therein which concerned the internal operations of the medical facilities that were to be constructed. Nor is there anything to suggest that the Law would deal with the composition of the staff of physicians that would be employed or extended professional privileges. And there is no suggestion that the medical facility contemplated for construction and operation could in fact, under certain circumstances, have its license to operate suspended or revoked by the State Board of Health for failure to accord a certain physician staff privileges.

The Law is a "bricks and mortar" law, concerned with limiting the construction of unnecessary medical facilities. The title to the

Law expressly states that, and neither states nor suggests anything else.

We do not consider here either the desirability or the constitutionality of a specific Staff Privileges Statute. Whether such legislation is or is not in the public interest is not pertinent to our decision. What is vital is the fact that no member of the General Assembly of Virginia, interested citizen, physician, hospital administrator or trustee of a hospital board would suspect from a painstaking examination of the title to the Law that its body contained any provision therein regarding or controlling staff privileges to be accorded physicians. The granting or withholding of staff privileges in any hospital is normally an administrative matter that is diverse and dissimilar in nature and has no necessary connection with the building of a hospital or a limitation on such construction.

Present Article IV, Section 12 has been a part of the Virginia Constitution for many years, and in the most recent revision of the Constititution in 1971 no substantive changes were made in its wording. The function of the Section was referred to in *The Constitution of Virginia: Report of the Commission on Constitutional Revision,* 148 (1969), where, under Comment, it was observed:

> "Historically, provisions like that set out in this section were designed to prevent several abuses in the legislative process: (1) log-rolling, whereby two or more blocs (which might separately be minorities in the legislative body) combine forces on a bill containing several unrelated features, no one of which by itself could command a majority; (2) lack of notice to legislators who, but for the one object requirement, might be unaware of the real contents of a bill; (3) lack of notice to the public of what measures are being considered by the Legislature; (4) lack of notice to those likely to be affected by enacted bills; (5) careless amending and reenacting, and therefore problems of construction, meant to be cured by requiring publication at length of a law revived or amended. Most state constitutions agree with Virginia's section 52 in requiring that bills be confined to one subject or object." [Footnotes omitted.]

In *Iverson Brown's Case,* 91 Va. 762, 771, 21 S.E. 357, 360 (1895), it was said:

"It is claimed that the body of the statute embraces many objects, instead of one object, as required by the constitutional provision, and, further, that these many objects are not expressed in the title; . . .

"The provision of the Constitution is a wise and wholesome one. Its purpose is apparent. It was to prevent the members of the legislature and the people from being misled by the title of a law. . . ."

*See also John Doe v. Brown,* 203 Va. 508, 125 S.E.2d 159 (1962); *Kingan, Inc. v. City of Richmond,* 198 Va. 820, 97 S.E.2d 11 (1957); *Vending Corp. v. Board of Pharmacy,* 195 Va. 626, 79 S.E.2d 636 (1954); *Carroll v. Hutchinson,* 172 Va. 43, 200 S.E. 644 (1939).

The provision of the Constitution of Virginia in question is as wise, wholesome and necessary today as it was in 1895 when *Iverson Brown's Case* was decided.[2] The legislation under consideration sought to provide the means by which over-construction of hospital facilities in Virginia could be controlled and restricted to established need. The Committee amendment was one that concerned the composition and privileges of the professional staff of medical facilities. This amendment, as well as the bill as originally introduced, contains matters of vital concern to physicians and to the medical fraternity generally, but in varying degrees. Conceivably, a legislator, a physician, or a private citizen might be in complete agreement wth the objective sought by the enactment of a Medical Care Facilities Certificate of Public Need Law, but in violent opposition to a hospital being operated by an open staff; or, one could feel strongly that no restriction should be placed on the construction of hospitals, but that staff privileges in such hospitals should be available equally to all qualified physicians.

For the purpose of our decision here, we sever Code §32-211.16, concerning staff privileges from the Medical Care Facilities Certificate of Public Need Law, and hold that its incorporation in the Law violates Article IV, Section 12 of the Constitution of Virginia.

It is unnecessary that we consider Chippenham's assignments of cross-error. The final decree of the court below, insofar as it declares that Section 32-211.16 of the Code of Virginia, as amended, is void, ineffective, and without force of law, and enjoins appellants from enforcing the provisions of that section, is

*Affirmed.*

---

[2] In *Parker v. Commonwealth,* 215 Va. 281, 208 S.E.2d 757 (1974), it was held that if title to an amendatory act correctly cites the Code sections to be amended, there is sufficient compliance with Article IV, Section 12 of the Constitution.