Present: Carrico, C.J., Compton, Stephenson, Hassell, Keenan, and Koontz, JJ., and Whiting, Senior Justice

JAMES S. GILMORE, III,
ATTORNEY GENERAL OF VIRGINIA

v. Record No. 961014    OPINION BY JUSTICE BARBARA MILANO KEENAN
                                            November 1, 1996
WILLIAM E. LANDSIDLE,
COMPTROLLER OF VIRGINIA, ET AL.


UPON A PETITION FOR A WRIT OF MANDAMUS


This is an original petition for a writ of mandamus brought by the Attorney General of Virginia, James S. Gilmore, III (the Attorney General), against the Comptroller of Virginia, William E. Landsidle (the Comptroller). Bruce F. Jamerson, the Clerk of the House of Delegates and Keeper of the Rolls of the Commonwealth (the Clerk), was permitted to intervene as a party respondent.

The issue in this case concerns the constitutionality of House Bill 29, an appropriation bill enacted by the General Assembly in 1996. In a May 15, 1996 letter to the Attorney General, the Comptroller expressed doubt concerning the validity of House Bill 29. The Comptroller alleged that the Clerk failed to enroll and present to the Governor the entire bill passed by the General Assembly. The Comptroller also contended that certain spending instructions in House Bill 29 were inconsistent with Chapter 853 of the Acts of the Assembly of 1995, and that to the extent those provisions in the 1996 bill were inconsistent with Chapter 853, he would not make payments until this Court adjudicated the validity of the bill. Pursuant to Code § 8.01-

653,[1] the Attorney General filed a petition for a writ of mandamus in this Court directing the Comptroller to comply with the provisions of Chapter 966 of the Acts of Assembly of 1994, the original appropriation act for the 1994-96 biennium, as amended by Chapter 853.  The petition requested this Court to declare House Bill 29 unconstitutional.

Since the Constitution of Virginia was amended in 1971, three different types of budget bills have been enacted.  The original budget bill for a biennium is introduced in even-numbered years.  An "interim budget bill" is introduced in the odd-numbered year of the biennium, and contains a Governor's recommendations for amendments to the original budget bill. Finally, a "caboose bill," including a Governor's recommendations for changes to the appropriation act, as amended, may be introduced in the next even-numbered year for the remaining months of the biennium.

On January 10, 1996, House Bill 29, a "caboose bill," was

---

[1] Code § 8.01-653 provides, in relevant part, that when the Comptroller notifies the Attorney General that he has doubt with respect to the validity of an act of the General Assembly appropriating money out of the Commonwealth's treasury, the Attorney General may file a petition for a writ of mandamus in this Court directing the Comptroller to pay such money as may be proper.

introduced in the General Assembly containing the 1996 amendments to Chapter 966 of the Acts of Assembly of 1994, as amended by Chapter 853 of the Acts of Assembly of 1995 (collectively, the existing appropriation act).  As introduced, House Bill 29 set forth the existing appropriation act, in addition to certain proposed amendments.  House Bill 29 was titled

> [a]n Act to amend and reenact Chapter 966 of the Acts of Assembly of 1994, as amended by Chapter 853 of the Acts of Assembly of 1995, and which appropriated the public revenues for the two years ending, respectively, on the thirtieth day of June, 1995, and the thirtieth day of June, 1996.

The bill, as introduced, contained an enactment clause providing for the amendment and reenactment of 15 so-called "sections" of the existing appropriation act, and for continuation of the appropriation for the biennium, as amended.

After undergoing further amendment by the House of Delegates and the Senate, House Bill 29 proceeded to the Joint Conference Committee, which recommended that the bill be adopted as introduced, with the committee's proposed amendments.  The Joint Conference Committee report was adopted by both houses, and the Clerk enrolled House Bill 29 for presentation to the Governor.

Enrolled House Bill 29 contained an enactment clause providing for the amendment and reenactment of specified portions of the existing appropriation act which were designated as "items" and "sections."  The clause also provided for the addition of certain so-called "items" and continued the

appropriation for the biennium, as amended.

The enrolled bill consisted of 142 pages and contained those provisions listed in the enactment clause which had been amended or added during the 1996 session. The enrolled bill excluded those "items" in the existing appropriation act which were not amended by House Bill 29. By contrast, House Bill 29, as introduced, contained 456 pages, setting forth the amended provisions listed in the enactment clause in the context of the existing appropriation act.

The Governor informed the General Assembly that, because House Bill 29 had been enrolled to include only the items added or amended during the 1996 session, he concluded that the bill was not properly enrolled under Article IV, Section 12 and Article V, Section 6 of the Constitution of Virginia. The Governor alleged that his acceptance of the enrolled bill would destroy his ability to protect the public purse through his exercise of the item veto.

On May 16, 1996, the Governor informed the General Assembly that he considered House Bill 29 a "legal nullity" because it was not properly enrolled and presented. He also advised the legislature that the Attorney General would commence an action in this Court, with the Governor's concurrence, to address this issue.

House Bill 29 became law pursuant to Article V, Section 6 of the Constitution, which provides, in part, that if a Governor

does not act on a bill within thirty days after the adjournment of the reconvened General Assembly session, the bill becomes law without his signature.  The Attorney General filed the present petition for a writ of mandamus on May 16, 1996, and presented the following questions for our review.

    A.    When an act appropriating the public revenue of the Commonwealth is amended, may the bill effecting those amendments be enrolled and presented to the Governor setting out less than the full budget act, together with any amendments?

    B.    If less than the full budget act may be enrolled and presented, what portions of the budget must be enrolled so as to (i) comply with Article IV, Sections 11 and 12 of the Virginia Constitution, and (ii) not impermissibly encumber the Governor's authority, granted in Article V, Section 6(d) of the Virginia Constitution, to veto an item of the bill?

    C.    Where a provision of an appropriation bill does not effectively qualify the amount or purpose of an appropriation, and is separable, is such provision susceptible to the gubernatorial veto granted in Article V, Section 6(d)?

In determining whether the writ of mandamus should be granted, we first consider the issue whether enrolled House Bill 29 is the same bill passed by the General Assembly.  The Attorney General contends that House Bill 29 reenacted all unamended portions of the existing appropriation act, as well as the amendments.  The Attorney General advances three related arguments based on that assertion:  (1) that enrolled House Bill 29 violates the requirement of Article IV, Section 11 that the

- 5 -

bill enrolled and signed be the same bill that "has been passed by both houses," (2) that enrolled House Bill 29 violates Article V, Section 6, which requires the General Assembly to present to a Governor every bill "which passes the Senate and House of Delegates," and (3) that the Clerk of the House of Delegates failed to enroll the entire bill pursuant to Code § 30-14, which requires enrollment of "all acts of the General Assembly."

In response, the Clerk asserts that only the so-called "sections" and "items" listed in the enactment clause of House Bill 29 were reenacted by that bill. Thus, the Clerk contends that the unamended items of the existing appropriation act were not reenacted in House Bill 29, and that the Attorney General has failed to establish that enrolled House Bill 29 is a different bill than that passed by the General Assembly. We agree with the Clerk.

The title of an act is not part of the act itself. Commonwealth v. Gaines, 4 Va. (2 Va. Cas.) 172, 180 (1819). The purpose of the title is to state the general subject covered by the act, and the content of the title may be broader than the legislation specifically enacted. See Town of Narrows v. Giles County, 128 Va. 572, 583, 105 S.E. 82, 85 (1920).

In contrast, the enactment clause is part of the body of the act which states the precise action taken by the legislature, thereby establishing the jurisdiction and the authenticity of the act. See 1A Norman J. Singer, Sutherland on Statutory

Construction § 19.01 (5th ed. 1993). The enactment clause also secures uniformity of identification, thus preventing inadvertence, possible mistake, and fraud. See Joiner v. State, 155 S.E.2d 8, 10 (Ga. 1967); State v. Patterson, 4 S.E. 350, 352 (N.C. 1887); State v. Burrow, 104 S.W. 526, 529 (Tenn. 1907).

The Constitution of Virginia does not contain a provision requiring that legislative acts contain an enactment clause. Webster v. Commonwealth, 141 Va. 589, 597, 127 S.E. 377, 380 (1925). However, when an act does contain such a clause, this Court may rely on the clause to determine the precise content of legislation. See District Road Board v. Spilman, 117 Va. 201, 205, 84 S.E. 103, 104 (1915). In Spilman, this Court relied on an act's enactment clause in determining the particular action taken by the legislature, and whether publication of the single amended section of a multi-section act met the constitutional requirement of publication "at length." Id. at 205, 84 S.E. at 104.

We place equal reliance on the enactment clause of enrolled House Bill 29. The clause did not state that any unamended items were "reenacted." Moreover, the clause used the word "reenacted" with reference only to designated "items" and "sections."[2] Thus,

[2]We also note that the enactment clause of House Bill 29, as introduced, did not state that any unamended items were "reenacted." Like the enactment clause in enrolled House Bill 29, the enactment clause in the bill, as introduced, used the

we conclude that enrolled House Bill 29 did not provide for the reenactment of unamended items, and that the record before us does not show that the Clerk enrolled a different bill than actually was passed.[3]

In effect, the Attorney General asks us to assume that the Clerk enrolled, and the presiding officers of both houses signed, a different bill from the one enacted by the Senate and House of Delegates, contrary to the duties imposed by Article IV, Section 11 and Article V, Section 6 of the Constitution of Virginia, as well as Code § 30-14. However, we are not permitted to make such an assumption. In the absence of clear evidence to the contrary, this Court must presume that a public officer has properly discharged his official duties. Murdock v. Nelms, 212 Va. 639,

(..continued)

word "reenacted" only with reference to designated portions identified as "sections." Thus, House Bill 29, as introduced, did not purport to reenact any unamended items.

[3]The fact that the legislative staff of the General Assembly provided to the Department of Budget and Planning a copy of the entire appropriation act, with all unamended and amended provisions, does not establish that the General Assembly reenacted the unamended items. We will not speculate whether the legislative staff submitted the entire act to that Department due to the nature of the review the Department performs, or whether the staff took this action for any other particular reason.

642, 186 S.E.2d 46, 49 (1972); <u>Robertson v. Commonwealth</u>, 12 Va. App. 854, 856-57, 406 S.E.2d 417, 418 (1991); <u>see</u> <u>Smith v. Commonwealth</u>, 219 Va. 554, 559, 248 S.E.2d 805, 808 (1978). Applying this principle to the record before us, we conclude that enrolled House Bill 29 is the same bill passed by the General Assembly.

> We now consider Question A:
> When an act appropriating the public revenue of the Commonwealth is amended, may the bill effecting those amendments be enrolled and presented to the Governor setting out less than the full budget act, together with any amendments?

Since Code § 8.01-653 requires that all questions presented under that section relate to the constitutionality or interpretation of a particular appropriation act, we answer Question A with reference to the provisions of House Bill 29. Further, we examine the question in the context of our conclusion above that enrolled House Bill 29 is the same bill as that passed by the General Assembly. Thus, we consider the issue whether the Clerk was required to enroll the <u>entire</u> biennial appropriation act in House Bill 29 when only specified <u>portions</u> of the existing appropriation act were amended in the current legislative session.

Article IV, Section 12 of the Constitution of Virginia provides:
> No law shall embrace more than one object, which shall be expressed in its title. Nor shall any law be revived or amended with reference to its title, but the act revived or the section amended shall be reenacted and published at length.

- 9 -

The publication requirement of Article IV, Section 12 is a provision that is common to many state constitutions. The primary purpose of such a provision is to prevent the legislature from accidentally or intentionally misleading the public regarding the precise action taken in a given enactment. See Sinclair Refining Co. v. Brumett, 267 P.2d 576, 578 (Okla. 1954); State v. Lawson, 82 P. 750, 751 (Wash. 1905).

This requirement is a corollary provision to the "one object" requirement of the same section. Other purposes underlying both requirements include the prevention of careless amendment of a bill and the provision of clear notice to those affected by an enacted bill. See State Board of Health v. Chipphenham Hosp., 219 Va. 65, 74, 245 S.E.2d 430, 435-36 (1978). The issue whether House Bill 29 was enrolled and published in a manner that satisfies the requirements of Article IV, Section 12 must be considered in the framework of these constitutional purposes.

We first decide whether House Bill 29 is an "act revived" or a "section amended" within the meaning of Article IV, Section 12. Although the Attorney General does not argue that House Bill 29 is an "act revived" under that section, we nevertheless must consider this question in determining whether the bill was published in compliance with Article IV, Section 12.

> The primary construction of the word "revive" is 'to give life to again.' If it is a creative act to give life to dead matter once, it is no less a creative

act to give life again to the same matter when it becomes dead.  The syllable 're' in the word indicates the use of old matter, and the syllable 'vive' means to 'give life to,' which is one of the primary meanings of the word 'create.'  The quality of the act inheres in the giving of life, not in the material that is to be vivified.  Nor is the quality of the act changed by repetition.

Ballentine's Law Dictionary 1115 (3rd ed. 1969); see also Black's Law Dictionary 1321 (6th ed. 1990).

The plain, ordinary meaning of the word "revive" comports with the above definition.  That meaning is "'to return to consciousness or life:  recover life, vigor, or strength.'"  Webster's Third New International Dictionary 1944 (1993).

A "reviving act" is an act "which restores legal existence and force to a statute that has been expressly or impliedly repealed."  1A Singer, Sutherland on Statutory Construction § 22.26.  The term "reviving act" also includes the restoration of an act that has expired.

Applying the above definitions, we conclude that House Bill 29 is not an "act revived" within the meaning of Article IV, Section 12.  Chapter 966 of the Acts of Assembly of 1994 remained in continuous effect through June 30, 1996, except as it was amended by Chapter 853 of the Acts of Assembly of 1995 and by House Bill 29.  Thus, the appropriation act for the 1994-96 biennium was not repealed and did not expire until it was supplanted by the 1996-98 biennial appropriation act.

Since House Bill 29 is not an "act revived" under Article IV, Section 12, the meaning of the term "section amended"

controls the issue before us.  The word "section" is generally defined as the smallest distinct subdivision of a legislative act.  See Black's Law Dictionary 1353.

In District Road Board v. Spilman, this Court held that publication of only the amended section of a multi-section act satisfied the publication requirement of the predecessor provision of Article IV, Section 12.  We stated that publication of the single amended section met "both the letter and spirit of the Constitution."  Id. at 206, 84 S.E. at 104.  The fact that Spilman involved an amendment of a single section, rather than of multiple sections, is not a distinction of constitutional significance, because the notice function of Article IV, Section 12 is satisfied when the public is provided notice of every change made to a law.

Most courts which have construed similar constitutional provisions have held that if one or more sections of an act are amended, and constitute less than the entire act, the constitutional requirement is satisfied if the amended sections are set forth alone, without setting out the entire act.  See, e.g., Crocher v. Abel, 180 N.E. 852, 854 (Ill. 1932); Allphin v. Ohio River Co., 306 S.W.2d 94, 95 (Ky. 1957); Sinclair Refining Co., 267 P.2d at 578; Lawson, 82 P. at 751.  However, this Court has not construed the term "section amended" in the context of an appropriation act.

The Attorney General argues that the word "section" in

- 12 -

Article IV, Section 12 refers to either (1) the entire provision designated as a "section" by the General Assembly which contains an amended item, or (2) the entire appropriation act, including its unamended provisions.  The Attorney General contends that one of the above definitions is necessary to secure the purposes of Article IV, Section 12 and the Governor's item veto power under Article V, Section 6.  We disagree.

We consider and define the word "section" in its fixed constitutional sense, rather than by reference to the structural organization of a given appropriation act.  See Brault v. Holleman, 217 Va. 441, 449, 230 S.E.2d 238, 243-44 (1976).  We find no merit in the Attorney General's argument that a "section amended" refers to the General Assembly's designation of a "section" in an appropriation act.  That designation is not determinative of this issue because the Constitution, rather than the General Assembly, controls the question of what portions of a budget act must be enrolled and presented to a Governor.  See id. Moreover, that designation does not constitute the smallest distinct subdivision of an appropriation act.

We likewise reject the Attorney General's contention that a "section amended" constitutes the entire appropriation act, as amended by House Bill 29.  Such an interpretation plainly exceeds the express language of House Bill 29, in which only certain specified portions were amended and reenacted or added to the existing appropriation act.

The words "section" and "item" are not synonymous.  In Dodson v. Commonwealth, 176 Va. 281, 296, 11 S.E.2d 120, 127 (1940), we defined the word "item" in the context of an appropriation act as an "indivisible sum of money dedicated to a stated purpose."  Under this definition, an item is the smallest distinct unit of an appropriation act.  However, in order to fulfill the notice function of Article IV, Section 12, a "section amended" must include not only "an indivisible sum of money dedicated to a stated purpose" which has been amended, added, or deleted in the current legislative session, but also the conditions and restrictions pertaining to that indivisible sum.

In addition, appropriation acts may include provisions that do not themselves constitute an appropriation of funds and are unrelated to any item in the act.  This type of provision which is added or amended in the current legislative session also must be included in the definition of "section amended" to ensure the public policy purposes underlying Article IV, Section 12.

Therefore, in the appropriation context, we conclude that, at a minimum, a "section amended" includes (1) an amended item with all pertaining conditions and restrictions; (2) an added item with all pertaining conditions and restrictions; (3) a deleted item with all pertaining conditions and restrictions; and (4) a provision that is unrelated to any item,[4] which has been

---

[4]The issue whether a Governor can veto any such unrelated provision is not before us in Question A.  Thus, while this type

amended or added to the biennial appropriation act in the current legislative session.

Under this definition of "section amended," House Bill 29 complies with both the letter and spirit of Article IV, Section 12. The General Assembly reenacted, enrolled, and presented to the Governor the "sections amended" in their entirety. Enrollment and publication of the complete biennial budget was not necessary, because each amended or added item referred to something which could be eliminated from the bill without affecting the enactment's other purposes or provisions. See Brault, 217 Va. at 447, 230 S.E.2d. at 242.

We find no merit in the Attorney General's argument that enrollment of the entire biennial appropriation act was necessary to preserve the Governor's item veto power under Article V, Section 6 of the Constitution of Virginia. That section provides, in part, that "[e]very bill which passes the Senate and House of Delegates, before it becomes law, shall be presented to the Governor."

Article V, Section 6 also details a Governor's powers with respect to the legislation presented, including his power to veto or recommend amendments to a bill. The section further states (..continued)

of provision falls within the meaning of "section amended," as defined above, we do not address whether this type of provision is subject to a Governor's item veto power.

that a Governor has the authority to veto "any particular item or items of an appropriation bill."

Here, the Governor's constitutional right of item veto was preserved, because the Governor could have vetoed any item which had been amended or added in the current legislative session. Each amended or added item was capable of being assessed by the Governor on its own merits, because its removal would not have altered any other indivisible sum in the budget or have affected the enactment's other purposes or provisions. See Brault, 217 Va. at 447, 230 S.E. 2d at 242.

Under Article V, Section 6, once a Governor has signed a bill, it becomes law. Thus, when the Governor signed Chapter 966 of the Acts of Assembly of 1994, and Chapter 853 of the Acts of Assembly of 1995, the provisions contained in those acts became law. Since House Bill 29 did not amend and reenact the vast majority of those provisions, they were not subject to the Governor's item veto power.

The Attorney General's position would allow a Governor to veto provisions in an appropriation law which have been in effect for one year or more, even though those provisions have not been amended in the current legislative session. Thus, under that position, a Governor could veto an appropriation that has already been spent, or an appropriation that has been committed in a contract binding the Commonwealth. Such results could adversely affect the Commonwealth's financial standing, and we reject the

arguments on which they are based.

We also find no merit in the Attorney General's argument that the Clerk was required to enroll the entire biennial appropriation act in House Bill 29 to guarantee that no item was partially enrolled. This alleged problem of "partial enrollment" of items in House Bill 29 is illusory under a proper construction of "section amended," because all conditions and restrictions pertaining to each amended or added item were enrolled along with the item in question.[5] Further, in determining whether to veto a particular amended or added item, the Governor could have compared that item to the unamended provisions of the existing appropriation law.

---

[5]In his argument on Question A, the Attorney General cites three examples of a type of "general" provision which he alleges are conditions or restrictions. He asserts that the General Assembly improperly insulated these provisions from the Governor's item veto by not enrolling all items allegedly related to those provisions. Yet, in Question C, the Attorney General has argued that this very type of "general" provision is separable from any item, and thus is subject to the Governor's item veto. Since the Attorney General has advanced inconsistent arguments regarding this type of provision, and since we do not reach the merits of Question C, we do not further consider these arguments.

Enrollment of the entire biennial appropriation act also was not necessary to preserve the Governor's responsibility under Article X, Section 7 to ensure that expenses for the biennium do not exceed revenues.  If the Governor believed that any item which had been added or amended created a potential revenue deficit for the biennium, he could have vetoed that item.  Alternatively, the Governor could have returned an objectionable item to the house in which it originated with recommendations for its amendment.  See Article V, Section 6.

Therefore, in response to Question A, we answer that Article IV, Section 12 and Article V, Section 6 of the Constitution of Virginia did not require enrollment of items of the existing appropriation act which had not been amended in the current legislative session.

> We next consider Question B:
> If less than the full budget act may be enrolled and presented, what portions of the budget must be enrolled so as to (i) comply with Article IV, Sections 11 and 12 of the Virginia Constitution, and (ii) not impermissibly encumber the Governor's authority, granted in Article V, Section 6(d) of the Virginia Constitution, to veto an item of the bill?

The principles set forth in our discussion of Question A are directly applicable here.  As stated above, Code § 8.01-653 requires that the question presented relate to the constitutionality or interpretation of a particular appropriation act.  Thus, we answer Question B with reference to House Bill 29.  Under the above definition of "section amended," the Clerk was

required to enroll every added or amended item,[6] with all pertaining conditions and restrictions, to comply with Article IV, Section 12 of the Constitution of Virginia, and to preserve the Governor's item veto power under Article V, Section 6 of the Constitution of Virginia.  Further, since House Bill 29 does not contain any provision that is <u>unrelated</u> to any item, we expressly do not state whether such a provision would be subject to the Governor's item veto power.

> We turn now to Question C:
> Where a provision of an appropriation bill does not effectively qualify the amount or purpose of an appropriation, and is separable, is such provision susceptible to the gubernatorial veto granted in Article V, Section 6(d)?

We do not reach the merits of this question, however, because it does not come within the defined scope of questions permitted under Code § 8.01-653.  That section provides, in relevant part:

> In any such [mandamus] proceeding the court shall consider and determine all questions raised by the Attorney General's petition <u>pertaining to the constitutionality or interpretation of any such act</u>, even though some of such questions may not be necessary to the decision of the question of the duty of such Comptroller and Treasurer of the Commonwealth to make payment of the moneys appropriated or directed to be paid.

<u>Id.</u>  (Emphasis added.)

Question C does not pertain to "the constitutionality or

---

[6]There were no deleted items in House Bill 29.

interpretation of any such act" but merely states a hypothetical question.  Further, in his petition, the Attorney General has not asked us to consider the constitutionality or interpretation of any particular provision of a given act, but merely has asked us to provide general guidance regarding future enactments.  We are precluded from considering such a hypothetical question.

Conclusion

For these reasons, we conclude that enrolled House Bill 29 is the same bill enacted by the General Assembly, that the bill was published "at length" within the meaning of Article IV, Section 12 of the Constitution of Virginia, and that the bill did not impair the Governor's item veto power or his ability to ensure that expenses for the biennium did not exceed revenues. Accordingly, the writ of mandamus requested by the petitioners will be denied.

Writ denied.

CHIEF JUSTICE CARRICO, JUSTICE COMPTON, and JUSTICE STEPHENSON concur in the result.