Present:  Kinser, C.J., Lemons, Millette, Mims, McClanahan, and
Powell, JJ., and Lacy, S.J.

PHYLLIS H. KISER,
EXECUTRIX OF THE ESTATE OF
ORVIN H. KISER, SR., DECEASED
                                        OPINION BY
v.  Record No. 120698        CHIEF JUSTICE CYNTHIA D. KINSER
                                     JANUARY 10, 2013
A.W. CHESTERTON CO., ET AL.

            UPON A QUESTION OF LAW CERTIFIED BY THE
        UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

      The United States Court of Appeals for the Third Circuit

entered an order of certification requesting that this Court

exercise jurisdiction pursuant to Article VI, Section 1 of the

Constitution of Virginia and Rule 5:40, and answer the following

question of law:

        Whether, under Va. Code § 8.01-249(4), a
        plaintiff's cause of action for damages due to
        latent mesothelioma is deemed to accrue [I] at
        the time of the mesothelioma diagnosis or [II]
        decades earlier, when the plaintiff was diagnosed
        with an independent, non-malignant asbestos-
        related disease.

(Numeral designators added).[1]

      We hold that when enacting Code § 8.01-249(4), the General

Assembly did not abrogate the common law indivisible cause of

action principle and that a cause of action for personal injury

---

      [1] Code § 8.01-249(4) provides that a cause of action
for personal injury "resulting from exposure to asbestos or
products containing asbestos" accrues "when a diagnosis of
asbestosis, interstitial fibrosis, mesothelioma, or other
disabling asbestos-related injury or disease is first
communicated to the person or his agent by a physician."

based on exposure to asbestos accrues upon the first communication of a diagnosis of an asbestos-related injury or disease by a physician.

RELEVANT FACTS AND PRIOR PROCEEDINGS

The pertinent facts are not in dispute and are taken from the opinion in Kiser v. A.W. Chesterton Co., 770 F.Supp.2d 745 (E.D. Pa. 2011), and the certification order in Kiser v. A.W. Chesterton Co., Rec. No. 11-1986 (3d Cir. March 26, 2012). Orvin H. Kiser, Sr. worked at a "DuPont" plant in Waynesboro, Virginia from 1957 to 1985, during which time he was exposed to asbestos. After being diagnosed with nonmalignant pleural thickening and asbestosis in 1988, he filed a timely suit in the United States District Court for the Western District of Virginia in 1990 against numerous asbestos manufacturers, sellers, and distributors, seeking damages for his employment-related exposure and resulting medical condition. In 2010, that action was voluntarily dismissed.

In November 2008, Kiser was diagnosed with mesothelioma, an asbestos-related malignant cancer of the lung lining. He died the following March. Acting as executrix of her deceased husband's estate, Phyllis H. Kiser (the Executrix), filed a wrongful death action in October 2010 in the United States District Court for the

2

Western District of Virginia against twenty-one defendants, none of which were parties to the first action.  See Kiser, 770 F.Supp.2d at 746-47.  The Executrix alleged that Kiser's exposure to the defendants' products during his employment at the DuPont plant caused Kiser's development of mesothelioma and subsequent death.  Id.  The Judicial Panel on Multidistrict Litigation transferred the action to the United States District Court for the Eastern District of Pennsylvania.

The various defendants filed motions to dismiss, asserting that the applicable statute of limitations barred the Executrix' action.  Id. at 747.  The defendants asserted that, under the indivisible cause of action rule, the current action accrued at the time of Kiser's diagnosis of asbestosis and pleural thickening and that the action was therefore barred by the two-year statute of limitations set forth in Code § 8.01-243(A).  Id.  The Executrix, however, maintained that Code § 8.01-249(4) "abolished the indivisible cause of action theory and that a new statute of limitations was triggered when . . . Kiser was diagnosed with mesothelioma" in 2008.  Id.

Citing Virginia case law that recognized the indivisible cause of action principle, the district court held that Code § 8.01-249(4) instituted a discovery rule

3

for the accrual of asbestos-related causes of action but did not supplant the indivisible cause of action rule with a "separate disease rule." Id. at 749-50. According to the district court, "Virginia adheres to the indivisible cause of action theory and the statute of limitations for all asbestos-related claims begins to run on the initial date of diagnosis by a physician of any asbestos-related disease." Id. at 751. The district court therefore dismissed the action as barred by the statute of limitations. Id.

The Executrix appealed to the United States Court of Appeals for the Third Circuit. In its certification order, the Third Circuit stated that the timeliness of the Executrix' cause of action "turn[ed] on an unresolved question of Virginia law: whether the indivisible cause of action theory applies to distinct and independent asbestos-related diseases stemming from the same exposure to asbestos." While the Third Circuit recognized Virginia's adherence to the indivisible cause of action rule in personal injury cases, it noted the absence of a ruling from this Court regarding the application of that principle to asbestos-exposure cases after the enactment of Code § 8.01-249(4).

4

Rule 5:40(a) requires that a certified question be "determinative" in "any proceeding pending before the certifying court."  The certified question is determinative because whether the Executrix' wrongful death action is time-barred turns on whether the action accrued at the time of Kiser's asbestosis diagnosis or at the time of his mesothelioma diagnosis.  Accordingly, we accepted the certified question of law by order entered June 8, 2012.

ANALYSIS

The certified question focuses specifically on Code § 8.01-249(4) and asks when, pursuant to that statute, "a plaintiff's cause of action for damages due to latent mesothelioma is deemed to accrue."  To answer that question and to understand the scope and purpose of Code § 8.01-249(4), it is instructive to review first the law in effect in 1985 when the General Assembly enacted subsection 4.  Prior to 1985, two distinct, relevant principles existed in the Commonwealth with respect to personal injury actions based on exposure to asbestos.  First, the accrual of a cause of action for such injury was governed by Code § 8.01-230, which at that time provided: "In every action for which a limitation period is prescribed, the cause of action shall be deemed to accrue and the prescribed limitation period shall begin to run <u>from the date the injury is sustained</u> in the

5

case of injury to the person."[2]  Former Code § 8.01-230 (Repl. vol. 1984) (emphasis added).  Construing the "statutory word 'injury' to mean positive, physical or mental hurt to the claimant, not legal wrong to him," we tied the running of the statute of limitations "to the fact of harm to the plaintiff, without which no cause of action would come into existence."[3] Locke v. Johns-Manville Corp., 221 Va. 951, 957-58, 275 S.E.2d 900, 905 (1981).  Because a cause of action does not arise until an injury to a plaintiff can be shown, see Louisville & Nashville Railroad Co. v. Saltzer, 151 Va. 165, 170-71, 144 S.E. 456, 457 (1928), the relevant question for purposes of the statute of limitations was: "When was the plaintiff hurt?" Locke, 221 Va. at 958, 275 S.E.2d at 905.

---

[2] In 1996, the General Assembly changed the phrase "cause of action" to the phrase "right of action."  See 1996 Acts ch. 328. However, Code § 8.01-249 continues to employ the phrase "cause of action."  The phrases "cause of action" and "right of action" are not synonymous.  See Van Dam v. Gay, 280 Va. 457, 460, 699 S.E.2d 480, 481 (2010).  When interpreting and applying a statute, we "assume that the General Assembly chose, with care, the words it used in enacting the statute, and we are bound by those words."  Halifax Corp. v. First Union Nat'l Bank, 262 Va. 91, 100, 546 S.E.2d 696, 702 (2001).

[3] The essential elements of a good cause of action, whether based on an alleged breach of contract or on a tortious act, are a legal obligation of a defendant to the plaintiff, a violation or breach of that right or duty, and a consequential injury or damage to the plaintiff.  In the absence of injury or damage to a plaintiff or his property, he has no cause of action and no right of action can accrue to him.

Caudill v. Wise Rambler, Inc., 210 Va. 11, 13, 168 S.E.2d 257, 259 (1969).

6

In a cause of action for exposure to asbestos resulting in mesothelioma, the answer to that question depended on competent medical evidence pinpointing the precise date the cancer first existed, which would be the first date it was capable of causing injury.  Id. at 959, 275 S.E.2d at 905.  That determination, however, was not tantamount to employing a "discovery rule, which triggers the running of the statute only when the injury is discovered or should have been discovered in the exercise of reasonable diligence."  Id.  As the Court recognized, the adoption of such a rule was a decision for the General Assembly to make.  Id. at 959, 275 S.E.2d at 905-06.

In 1985, the General Assembly did just that by adding subsection 4 to Code § 8.01-249, which contains exceptions to the accrual rule set forth in Code § 8.01-230 for certain causes of action.  1985 Acts ch. 459.  Code § 8.01-249(4) states:

> The cause of action in the actions herein listed shall be deemed to accrue as follows:
>
> . . . .
>
>     4.  In actions for injury to the person resulting from exposure to asbestos or products containing asbestos, when a diagnosis of asbestosis, interstitial fibrosis, mesothelioma, or other disabling asbestos-related injury or disease is first communicated to the person or his agent by a physician. However, no such action may be brought more than two years after the death of such person[.]

7

With the enactment of subsection 4, the question asked in Locke, when was a plaintiff hurt by exposure to asbestos, was no longer relevant to determining the accrual date of that particular cause of action. Instead, the cause of action accrued, and thus the statute of limitations began to run, when a physician first communicated a diagnosis of one of the specified diseases or of another "disabling asbestos-related injury or disease" to a plaintiff. Id.

The second pertinent principle that existed in 1985 when the General Assembly added subsection 4 to Code § 8.01-249 was the common law indivisible cause of action rule. "[A] cause of action is a set of operative facts which, under the substantive law, may give rise to a right of action." Roller v. Basic Constr. Co., 238 Va. 321, 327, 384 S.E.2d 323, 326 (1989); see also Rule 1:6(a). A right of action "is the remedial right accorded [a] person to enforce a cause of action [and] arises only when [a] person's rights are infringed." Roller, 238 Va. at 327, 384 S.E.2d at 326. Consequently, a right of action cannot arise until there is a cause of action, Caudill v. Wise Rambler, Inc., 210 Va. 11, 13, 168 S.E.2d 257, 259 (1969), and the two do not necessarily arise simultaneously. Van Dam v. Gay, 280 Va. 457, 460, 699 S.E.2d 480, 481 (2010). A single cause of action may give rise to separate rights of action that accrue at different times. First Virginia Bank-Colonial v.

8

Baker, 225 Va. 72, 81, 301 S.E.2d 8, 13 (1983); see also

McKinney v. Virginia Surgical Assocs., P.C., 284 Va. 455, 460,

732 S.E.2d 27, 29 (2012).

Although multiple rights of action may arise under a given

cause of action, a wrongful act generally gives rise to only a

single indivisible cause of action.  As the Supreme Court of the

United States explained in Baltimore Steamship Co. v. Phillips,

274 U.S. 316 (1927),

> [a] cause of action does not consist of facts,
> but of the unlawful violation of a right which
> the facts show. The number and variety of the
> facts alleged do not establish more than one
> cause of action so long as their result, whether
> they be considered severally or in combination,
> is the violation of but one right by a single
> legal wrong. The mere multiplication of grounds
> of negligence alleged as causing the same injury
> does not result in multiplying the causes of
> action. The facts are merely the means, and not
> the end. They do not constitute the cause of
> action, but they show its existence by making the
> wrong appear. The thing, therefore, which in
> contemplation of law as its cause, becomes a
> ground for action, is not the group of facts
> alleged in the declaration, bill, or indictment,
> but the result of these is a legal wrong, the
> existence of which, if true, they conclusively
> evince.

Id. at 321 (internal quotation marks omitted) (first emphasis

added).  When a plaintiff "suffer[s] but one actionable wrong

[or] a single wrongful invasion of a single primary right [such

as] the right of bodily safety," the plaintiff is "entitled to

but one recovery."  Id.

9

This Court has long applied this common law principle. In Street v. Consumers Mining Corp., 185 Va. 561, 39 S.E.2d 271 (1946), we stated:

> [A]s a general rule, where an injury, though slight, is sustained in consequence of the wrongful or negligent act of another and the law affords a remedy therefor the statute of limitations attaches at once. It is not material that all the damages resulting from the act should have been sustained at that time and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date. The act itself is regarded as the ground of the action and is not legally severable from its consequence. The statute then begins to run, and not from the time of the damage or discovery of the injury.

Id. at 566, 39 S.E.2d at 272 (internal quotation marks omitted).

Thus, a statute of limitations usually commences to run when injury is incurred as a result of a wrongful act. By enacting Code § 8.01-249(4), however, the General Assembly carved out an exception to this principle for asbestos exposure causes of action. Nevertheless, when the statute of limitations begins to run, it runs as to all damages caused by "the wrongful or negligent act of another," even if the individual suffers additional damages at a later date. See id.; Lo v. Burke, 249 Va. 311, 317, 455 S.E.2d 9, 13 (1995) ("[T]he statute of limitations begins to run when any injury, though slight, is sustained as the consequence of an alleged wrong, despite the fact that greater damage from the same wrong may be sustained at

10

a later date."); <u>Starnes v. Cayouette</u>, 244 Va. 202, 206, 419 S.E.2d 669, 671 (1992) ("[W]hen a tort causes a contemporaneous personal injury, the fact that the victim suffered greater physical or mental hurt from that tort at a later date does not defer the date of accrual of the cause of action.").

If the "act itself is regarded as the ground of the action," and thus cannot be "legally severable from its consequence," <u>Street</u>, 185 Va. at 566, 39 S.E.2d at 272, a single wrongful act may not give rise to two independent causes of action.  See <u>Shortt v. Hudson Supply & Equip. Co.</u>, 191 Va. 306, 310, 60 S.E.2d 900, 902 (1950) (A plaintiff injured in an automobile accident "had but a single claim – an indivisible cause of action for damages for his personal injuries arising out of the collision."); <u>Carter v. Hinkle</u>, 189 Va. 1, 4, 52 S.E.2d 135, 136 (1949) ("[A]s a general rule a single cause of action cannot be split into several claims and separate actions maintained thereon.").  The indivisible cause of action rule governs how many causes of action arise from a single wrongful act that violates a single right of a plaintiff; the rule applies to actions based on injury to the person regardless of how the person was injured.  See, e.g., <u>Baltimore S.S. Co.</u>, 274 U.S. at 321-22 (plaintiff struck by falling beam on ship); <u>Starnes</u>, 244 Va. at 204-06, 419 S.E.2d at 670-71 (plaintiff victim of sexual assault); <u>Shortt</u>, 191 Va. at 309-10, 60 S.E.2d

11

at 902-03 (plaintiff hurt in vehicle accident).  "The number and variety of facts alleged do not establish more than one cause of action so long as their result . . . is the violation of but one right by a single legal wrong."[4]  Baltimore S.S. Co., 274 U.S. at 321.

There is one notable exception to this rule: a single wrongful act may give rise to separate causes of action if that wrongful act violates distinct rights.  In Carter, the injured plaintiff filed an action for personal injuries after earlier filing an action for property damage caused by an automobile accident.  189 Va. at 3, 52 S.E.2d at 136.  Recognizing the general rule, the Court nevertheless noted that "the history of the common law shows that the distinction between torts to the person and torts to property has always obtained."  Id. at 4-6, 52 S.E.2d at 136-37 (internal quotation marks omitted).  The Court stated that two actions could be maintained when two distinct rights, the "right of personal security and the right of property," were invaded by a single wrongful act: " 'If two

---

[4] Certainly, if there are separate occurrences of wrongful conduct causing new injuries, separate causes of action may arise.  See Hampton Rds. Sanitation Dist. v. McDonnell, 234 Va. 235, 239, 360 S.E.2d 841, 843 (1987).  As the Third Circuit stated, however, the issue in this case is whether the indivisible cause of action rule applies "to distinct and independent asbestos-related diseases stemming from the same exposure to asbestos" in light of Code § 8.01-249(4). (Emphasis added.)  The Executrix' contention throughout this case has been that Code § 8.01-249(4) creates separate causes of action because the injury, not the harmful act, is discrete.

12

separate and distinct primary rights could be invaded by one and the same wrong, or if the single primary right should be invaded by two distinct and separate legal wrongs, in either case two causes of action would exist.' " Id. at 6-7, 52 S.E.2d at 138 (quoting John N. Pomeroy, Pomeroy's Code Remedies § 350 (4th ed. 1904)).

Although we have never addressed the indivisible cause of action principle in regard to asbestos exposure causes of action since the enactment of Code § 8.01-249(4), the principle nevertheless controls. That is, the Executrix' cause of action for Kiser's wrongful death resulting from exposure to asbestos accrued at the time of his diagnosis for asbestosis, see Code § 8.01-249(4), unless, as the Executrix argues, the enactment of subsection 4 of Code § 8.01-249 not only established a discovery accrual rule but also abrogated the common law. When it enacted § 8.01-249(4), the General Assembly is presumed to have known of the common law indivisible cause of action principle and its applicability to actions for injury to the person, including those based on exposure to asbestos. See Andrews v. Commonwealth, 280 Va. 231, 286, 699 S.E.2d 237, 269 (2010). The Court must, therefore, read Code § 8.01-249(4) "in conjunction with the common law, giving effect to both 'unless it clearly appears from express language or by necessary implication that the purpose of [Code § 8.01-249(4)] was to change the common

13

law.' "  Jenkins v. Mehra, 281 Va. 37, 44, 704 S.E.2d 577, 581 (2011) (quoting Isbell v. Commercial Inv. Assocs., Inc., 273 Va. 605, 614, 644 S.E.2d 72, 75-76 (2007)).

The Court presumes that no change to the common law was intended, and abrogation only occurs "when the legislative intent to do so is plainly manifested."  Id. (internal quotation marks omitted).  And, "even where a statute's purpose is to abrogate the common law, such statute is 'to be strictly construed and not to be enlarged in [its] operation by construction beyond [its] express terms.' "  Id. at 45, 704 S.E.2d at 581 (quoting Isbell, 273 Va. at 613, 644 S.E.2d at 75) (alterations in original).

We begin with the language of the statute at issue.  Code § 8.01-249(4) states:

> The cause of action . . . . [i]n actions for injury to the person resulting from exposure to asbestos or products containing asbestos [shall be deemed to accrue] when a diagnosis of asbestosis, interstitial fibrosis, mesothelioma, or other disabling asbestos-related injury or disease is first communicated to the person or his agent by a physician.

This language is plain and unambiguous.[5]  "In construing a statute, we must apply its plain meaning, and 'we are not free

---

[5] Because the Executrix does not assert that Code § 8.01-249(4) is ambiguous, we will not inquire, as she nevertheless requests, as to "what was the mischief and defect against which the previous law did not provide" prior to the 1985 amendment. City of Richmond v. Sutherland, 114 Va. 688, 691, 77 S.E. 470,

14

to add [to] language, nor to ignore language, contained in statutes.' " BBF, Inc. v. Alstom Power, Inc., 274 Va. 326, 331, 645 S.E.2d 467, 469 (2007) (quoting SIGNAL Corp. v. Keane Fed. Sys., Inc., 265 Va. 38, 46, 574 S.E.2d 253, 257 (2003)). " '[When] the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed.' " Barr v. Town & Country Props., 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990) (quoting Watkins v. Hall, 161 Va. 924, 930, 172 S.E. 445, 447 (1934)).

The particular "cause of action" addressed in subsection 4 is "for injury to the person resulting from exposure to asbestos or products containing asbestos." Code § 8.01-249(4). Such causes of action accrue when the diagnosis of any of the specified diseases or some "other disabling asbestos-related injury or disease" is communicated to the patient or his agent by a physician. Id. The other subsections within Code § 8.01-249 have this same grammatical structure. Each begins by identifying a specific cause of action and then defining the particular point at which that action accrues. In every listed cause of action but one, the accrual of the cause of action is

471 (1913). This Court does not look to legislative intent when the language of a statute is clear and unambiguous. Eberhardt v. Fairfax Cnty. Emps. Ret. Sys. Bd. of Trustees, 283 Va. 190, 194, 721 S.E.2d 524, 526 (2012).

demarcated by a prepositional phrase starting with the word

"when."  See, e.g., Code § 8.01-249(5) ("The cause of action

. . . . [i]n actions for contribution or for indemnification

[shall be deemed to accrue] when the contributee or the

indemnitee has paid or discharged the obligation.").

The Executrix contends, however, that the "separate listing

of the different asbestos-related diseases clearly and plainly

evinces the General Assembly's intent to treat each distinct

disease as a separate cause of action."  Under this reading, the

prepositional phrase in Code § 8.01-249(4) that contains the

listed diseases would not modify the verb "accrue" to specify

the point at which the cause of action accrues, but actually

would create separate causes of action.  According to the

Executrix, the cause of action specified in Code § 8.01-249(4)

is not a "cause of action . . . . for injury to the person

resulting from exposure to asbestos or products containing

asbestos," but is a "cause of action [for] asbestosis,

interstitial fibrosis, mesothelioma, or other disabling

asbestos-related injury or disease."  This interpretation

manifestly requires a re-writing of the statute.

By listing separate diseases in the disjunctive, the

General Assembly merely indicated that the diagnosis of any one

disease triggers the statute's application, a perfectly sensible

decision given the commonality of the listed diseases in

16

asbestos exposure cases.[6]  Moreover, whatever its purpose, the

itemization of distinct diseases does not alter the opening

language of the statute, which makes clear that it addresses the

accrual of "[t]he cause of action [i]n actions for injury to the

person resulting from exposure to asbestos or products

containing asbestos."  Code § 8.01-249(4).  In other words, the

General Assembly did not create a separate cause of action for

each asbestos-related injury or disease.

The Executrix also relies on the dissenting opinion in

Joyce v. A.C. & S., Inc., 785 F.2d 1200 (4th Cir. 1986)

(Swygert, J., dissenting).  But there, Judge Swygert argued that

separate diseases caused by asbestos exposure "represent rights

of action which mature independently and trigger statutes of

limitations separately," while the cause of action was "the

exposure to asbestos."  Id. at 1209 (Swygert, J., dissenting)

(emphasis added).  Judge Swygert believed this outcome was

consistent with "holding that the 'cause of action' itself is

unitary and indivisible."  Id.  The notion that a single cause

---

[6] Asbestosis is the most common asbestos-related disease,
and mesothelioma is the most fatal.  See Peerman v. Georgia-Pac.
Corp., 35 F.3d 284, 285 (7th Cir. 1994) (citing Gray's
Attorney's Textbook of Medicine ¶ 205C.11(1) (3d ed. 1980));
Hansen v. Johns-Manville Prods. Corp., 734 F.2d 1036, 1039 n.2
(5th Cir. 1984).  In addition, the Executrix acknowledges that
interstitial fibrosis and asbestosis are the same disease and
that the General Assembly merely included interstitial fibrosis
as an apposition to further identify asbestosis.  That
explanation undermines the significance that the Executrix
places on the separate listing of diseases.

17

of action could give rise to multiple rights of action is in accord with Virginia case law. See, e.g., McKinney, 284 Va. at 460, 732 S.E.2d at 29. But adopting that analysis in this case would violate the plain language of Code § 8.01-249(4), which refers only to causes of action.

Several other factors also support our holding that the General Assembly, by enacting Code § 8.01-249(4), created only a discovery accrual rule for asbestos exposure actions and did not abrogate the common law indivisible cause of action principle for such actions. The first is Code § 8.01-249(4)'s location in the Code. See Campbell Cnty. v. Royal, 283 Va. 4, 24, 720 S.E.2d 90, 100 (2012) (noting "the larger legislative context in which the General Assembly placed" a statute). Code § 8.01-249, as explained above, is an exception to the general rule set forth in Code § 8.01-230 for accrual of causes of action. Both Code §§ 8.01-230 and -249 are found in Chapter 4 of Title 8.01, which Chapter is titled "Limitations of Actions." Within Chapter 4, Code § 8.01-249 is found in Article 3 addressing "Personal Actions Generally." Chapter 3 of Title 8.01, on the other hand, is titled "Actions" and contains multiple Articles establishing particular causes of action. Thus, both Code §§ 8.01-230 and -249 limit causes of action by specifying when the actions accrue, but the actions themselves exist by virtue of other statutory provisions.

In amending Code § 8.01-249 throughout the years, the General Assembly has reaffirmed through the amendments' enactment clauses what is evident from the statute's plain language and location in the Code: that the provision deals only with the accrual of causes of action and does not create the causes of action.  An enactment clause "is part of the body of the act which states the precise action taken by the legislature, thereby establishing the jurisdiction and the authenticity of the act."  Gilmore v. Landsidle, 252 Va. 388, 394, 478 S.E.2d 307, 311 (1996).  The enactment clause "also secures uniformity of identification, thus preventing inadvertence, possible mistake, and fraud."  Id. at 395, 478 S.E.2d at 311.  "[T]his Court may rely on the [enactment] clause to determine the precise content of legislation."  Id.

In enacting subsection 4, the General Assembly stated that it was "[a]n Act to amend and reenact § 8.01-249 . . . relating to accrual of actions for personal injuries resulting from asbestos or asbestos products."  1985 Acts ch. 459.  Thus, the "precise action" taken by the legislature in enacting subsection 4 was to identify when an already existing cause of action accrues, and not to create a cause of action for each disease caused by asbestos exposure.  See Code § 8.01-249(4) Revisers' Note ("While [the discovery rule contained in the section] represents an exception to the general rule embodied in § 8.01-

19

230 . . . § 8.01-249 follows Virginia law."); Simon v. Forer, 265 Va. 483, 490-91, 578 S.E.2d 792, 796 (2003) (relying on Revisers' Note in interpreting meaning of statute).

Similarly, every other enactment clause for amendments to Code § 8.01-249 has made clear that the provision deals only with the accrual of existing causes of action, and not their creation. See 1966 Acts ch. 118 ("[a]n Act to amend and reenact § 8-13 . . . relating to limitations of personal actions generally"); 1986 Acts ch. 601 ("[a]n Act to amend and reenact § 8.01-249 . . . relating to accrual of causes of action"); 1991 Acts ch. 674 ("[a]n Act to amend and reenact § 8.01-249 . . . relating to accrual of actions"); 1992 Acts ch. 817 ("[a]n Act to amend and reenact § 8.01-249 . . . relating to when a cause of action is deemed to accrue in designated personal actions"); 1993 Acts ch. 523 ("[a]n Act to amend and reenact § 8.01-249 . . . relating to accrual of civil actions"); 1997 Acts ch. 565 ("[a]n Act to amend and reenact § 8.01-249 . . . relating to accrual of actions"); 2005 Acts ch. 213 ("[a]n Act to amend and reenact § 8.01-249 . . . relating to accrual of causes of action").  Thus, throughout the history of Code § 8.01-249, the General Assembly clearly stated its intent that this statute deals only with the accrual of causes of action.

In sum, nothing in Code § 8.01-249(4), including the itemization of separate asbestos-related diseases, constitutes

"express language or . . . necessary implication" that the General Assembly intended Code § 8.01-249(4) to abrogate the common law indivisible cause of action rule for asbestos exposure actions.  See Jenkins, 281 Va. at 44, 704 S.E.2d at 581 (internal quotation marks omitted).  Giving effect to both the common law and Code § 8.01-249(4), we hold that by enacting Code § 8.01-249(4), the General Assembly instituted a discovery rule for the accrual of actions based on exposure to asbestos.  It did not, however, abrogate the indivisible cause of action principle by creating a "separate disease rule" for such causes of action arising from a single wrongful act that violates a single right of a plaintiff.

CONCLUSION

We are well aware of the quandary confronting a plaintiff who has been diagnosed with an asbestos-related disease in deciding when to file an action under the current statutory and common law regime.  We are also aware that numerous jurisdictions, in noting the quandary, have permitted separate causes of action for malignant and non-malignant asbestos-related diseases.[7]  But we have repeatedly said that, in

---

[7] Many of the decisions from other jurisdictions on which the Executrix relies make clear, either expressly or implicitly, that the accrual of causes of action is determined by the judiciary in those jurisdictions.  See, e.g., Sopha v. Owens-Corning Fiberglas Corp., 601 N.W.2d 627, 632 (Wis. 1999); Pierce v. Johns-Manville Sales Corp., 464 A.2d 1020, 1025-27 (Md.

21

Virginia, remedying such policy-related problems is the role of the General Assembly, not ours.[8]  See, e.g., Shipman v. Kruck, 267 Va. 495, 503, 593 S.E.2d 319, 323 (2004) (refusing to adopt a discovery rule by judicial decision and noting that it is "the role of the General Assembly, not the judiciary, to change a rule of law that has been relied upon by bench and bar for so long").  The indivisible cause of action rule has existed in the Commonwealth for decades, and a decision that causes of action for asbestos exposure are not subject to the rule must come from the General Assembly, not the Court.

The certified question of law asks:

Whether, under Va. Code § 8.01-249(4), a plaintiff's cause of action for damages due to latent mesothelioma is deemed to accrue [I] at the time of the mesothelioma diagnosis or [II] decades earlier, when the plaintiff was diagnosed with an independent, non-malignant asbestos-related disease.

---

1983).  Obviously, the judiciary does not do so in Virginia.

[8] In fact, several statutes demonstrate that the General Assembly is aware of the difficulties in litigating asbestos exposure causes of action.  See Code § 8.01-277(B) (permitting dismissal of actions in cases where process is not served within one year, but excepting asbestos cases); Code § 8.01-335(D) (permitting cases where process is not served within one year to be struck from docket, but excepting asbestos cases).  These statutes further demonstrate that the General Assembly did not intend to abrogate the common law when it enacted subsection 4 of Code § 8.01-249.  Otherwise, these exceptions for asbestos exposure actions would not be needed.

(Numeral designators added). For the reasons stated, we answer that question in the negative with respect to alternative [I] and in the affirmative with respect to alternative [II].

<u>Certified question alternative [I] answered in the negative.</u>

<u>Certified question alternative [II] answered in the affirmative.</u>

JUSTICE MILLETTE, with whom JUSTICE MIMS joins, dissenting.

Today, the majority holds that "by enacting Code § 8.01-249(4), the General Assembly instituted a discovery rule for the accrual of actions based on exposure to asbestos. It did not, however, abrogate the indivisible cause of action principle by creating a 'separate disease rule.' " I agree with my colleagues that Code § 8.01-249(4) has but one purpose – to create a discovery rule. Because I do not agree that this conclusion mandates the outcome of today's opinion, however, I respectfully dissent.

As the majority demonstrates, the statute in question indeed creates a discovery rule. That is, it relates to the proper commencement of the statute of limitations. It provides no guidance whatsoever as to the question posed to us by the Third Circuit regarding when the cause of action is to accrue. Likewise, it offers no comment on the application of the indivisible cause of action rule in asbestos cases. To

23

interpret it to address either would be to embrace more than one object in a single law in violation of Article IV, § 12 of the Virginia Constitution.

Thus, we are left to answer the question posed by the Third Circuit without guidance from Code § 8.01-249(4). The majority holds that addressing whether separate causes of action arise in asbestos cases is a "policy-related problem[]" that is properly within the province of the General Assembly. To support this claim, the majority cites Shipman v. Kruck, 267 Va. 495, 503, 593 S.E.2d 319, 323 (2004). Shipman, while observing that it is within the authority of the General Assembly and not the Court to create a discovery rule, does not stand for the proposition that every issue implicating policy is the sole domain of the legislature. Courts must respect the line between judicial interpretation and legislating from the bench. The distinction here, however, is clear: discovery rules apply to the commencement of the statute of limitations, an issue that is fundamentally statutory in nature and properly sits with the legislature. The accrual of causes of action has long been governed by common law, see, e.g., Caudill v. Wise Rambler, Inc., 210 Va. 11, 13, 168 S.E.2d 257, 259 (1969); Locke v. Johns-Manville Corp., 221 Va. 951, 958, 275 S.E.2d 900, 905 (1981), and clarifying or refining the application of an

existing common law principle fits within the province and duty of this Court.

We should therefore turn to the common law governing when a cause of action accrues. The terms cause of action and right of action are often confused in legal writing and, as the majority points out, they are not synonymous. We have previously held that a cause of action accrues when the harm occurs, and not before:

> The essential elements of a good cause of action, whether based on an alleged breach of contract or on a tortious act, are a legal obligation of a defendant to the plaintiff, a violation or breach of that right or duty, and a consequential injury or damage to the plaintiff. In the absence of injury or damage to a plaintiff or his property, he has no cause of action and no right of action can accrue to him.

Caudill, 210 Va. at 13, 168 S.E.2d at 259. In Locke, 221 Va. at 958, 275 S.E.2d at 905, we held that when medical evidence showed that a cancerous mesothelioma tumor began its development not contemporaneously with the asbestos exposure but some time later, the development of the cancer and not the exposure triggered the accrual of the cause of action. The relevant question, we reiterated, was, "When was the plaintiff hurt?" Id.

This rule as to the accrual of the cause of action was not modified by Code § 8.01-249. This Code section simply lists discovery rules applicable to the commencement of the running of

25

the statute of limitations for the specific categories of claims listed in the statute. The creation of such a discovery rule for asbestos cases negates the need for medical testimony to identify when the cancer likely developed in cases such as Locke, but it has no effect on the accrual of the cause of action. Rather, it affects the accrual of the right of action.

The general rule for accrual of a right of action in Virginia, set forth in Code § 8.01-230, reads in pertinent part as follows:

> In every action for which a limitation period is prescribed, the right of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person . . . and not when the resulting damage is discovered, except . . . where otherwise provided [in another] statute.

Id. This statute was amended from an earlier version that erroneously used the term "cause of action" as opposed to "right of action." See Code § 8.01-230 (1984 Repl. Vol.). The same linguistic change should have been made to Code § 8.01-249, an example of a statute "otherwise provid[ing]" a specific time of accrual. In the absence of the change, the Code section is internally incongruous: a "cause" of action does not have a statute of limitations and likewise is not subject to a discovery rule. A cause of action is substantive in nature and always arises upon the harm to the plaintiff. Locke, 221 Va. at 958, 275 S.E.2d at 905. A "right" of action, to which Code

26

§ 8.01-249 is clearly intended to refer, is the legal ability to seek recourse for that cause of action, and is subject to discovery rules and statutes of limitations.  See Keister v. Keister, 123 Va. 157, 160, 96 S.E. 315, 316 (1918).

There is no statutory law or common law rule in Virginia requiring that distinct asbestos-related diseases constitute the same cause of action.[1]  When, as in the case of asbestosis and mesothelioma, there are two distinct and unrelated harms that accrue at different times, the plaintiff may have two separate causes of action.

A considerable portion of the majority opinion addresses the indivisible cause of action rule.  A common articulation of this principle is:

> where an injury, though slight, is sustained in consequence of the wrongful or negligent act of another and the law affords a remedy therefor the statute of limitations attaches at once.  It is not material that all of the damages resulting from the act should have been sustained at that time and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date.

Street v. Consumers Mining Corp., 185 Va. 561, 566, 39 S.E.2d 271, 272 (1946) (internal quotation marks omitted).  This principle in fact addresses not the accrual of the cause of

---

[1] The Joyce decisions, Joyce v. A.C. & S., Inc., 591 F.Supp. 449 (W.D. Va. 1984) and the Fourth Circuit case affirming the holding, Joyce v. A.C. & S., Inc., 785 F.2d 1200 (4th Cir. 1986), are federal interpretations of Virginia law and do not bind this Court.

27

action but rather the accrual of a right of action, the commencement of the statute of limitations, and the possibility of later claims being barred by issue or claim preclusion.[2] The indivisible cause of action rule is a principle of res judicata or estoppel (issue or claim preclusion), and does not influence whether the substantive cause of action exists. See Wilson v. Johns-Manville Sales Corp., 684 F.2d 111, 117-18 (D.C. Cir. 1982).

The law may indeed provide other bars to subsequent actions arising from the same act or set of acts, depending upon the details of the record and the nature of the previous action. That is a different question than whether the cause of action exists. Under Virginia law, it does. The simplest instance can be seen in the case of an individual who was diagnosed with mild asbestosis and chose not to bring suit. The mere diagnosis of asbestosis should not serve as a bar to a later suit for mesothelioma, upon its discovery. See id. If the second harm has not yet occurred upon the accrual of the first right of action, then the plaintiff cannot possibly bring them in the same action. "A disease like this cancer must first exist before it is capable of causing injury. To hold otherwise would

---

[2] Additionally, this principle has been invoked in cases where the additional damages were cumulative in nature and relate to the initial harm, which is not the issue before the Court.

28

result in the inequity of barring the mesothelioma plaintiff's cause of action before he sustains injury." Locke, 221 Va. at 959, 275 S.E.2d at 905. When the harm at issue is cancer to the lining of the lungs, it is illogical to say that the cause of action accrues before the cancer has even developed. Since the discovery rule under Code § 8.01-249(4) applies generally to asbestos-related injuries, it applies to mesothelioma victims regardless of a previous diagnosis of asbestosis.

Further bolstering the argument for two causes of action is the fact that, in multiple-exposure cases such as this, we do not know at the onset of the suit whether the relevant exposures that caused the two harms arose from the same act or set of acts.[3] To so conclude would be to hold as a matter of law that multiple exposures to different asbestos products must always constitute the same singular "act." In the case before us, we have potentially distinct causal exposures (given the multiplicity of defendants) and two distinct harms, linked only by the fact that the harms were caused by inhalation of the same

---

[3] The majority quotes a portion of the Third Circuit's memorandum of certification that refers to the two diseases as "stemming from the same exposure to asbestos." The same document acknowledges that Kiser's original asbestosis suit contained eighteen asbestos manufacturers, sellers, and distributors, and that the mesothelioma suit at bar originally contained twenty different additional defendants. Although these exposures may have occurred while working for the same primary employer, this appears from our position to be a multiple-exposure case.

substance.  It is reasonable to find two distinct causes of action.

Additionally, given that the first cause of action for asbestosis injury was voluntarily dismissed in the instant case, the effect of issue and claim preclusion mechanisms is dependent on the record and far beyond the scope of the certified question before the Court today.  The ample attention given by the majority to the indivisible cause of action rule is premature.

Our holding in Locke that the cause of action accrues at the time of the harm rather than at the time of exposure logically makes Virginia a "two-disease rule" state, in the common shorthand of asbestos litigation.  Beyond Locke, however, there are a multitude of reasons why the Commonwealth should recognize a two-disease rule in asbestos cases.

First, asbestosis and mesothelioma are medically discrete and independent diseases.  They develop in different parts of the body and follow dramatically different courses.  Asbestosis is a non-malignant disease of the lung, also known as interstitial fibrosis.  5 Richard M. Patterson, Lawyers' Medical Cyclopedia of Personal Injuries & Allied Specialties § 33.54, at 33-83 (6th ed. repl. ed. 2011).  The disease gradually worsens, particularly with continued exposure to asbestos, generally resulting in decreased pulmonary function and increased difficulty breathing over time.  Id. at 33-83 through 33-84.

30

Mesothelioma is a malignant cancer of the pleura (lining) of the lung or, more rarely, of the peritoneum (abdominal cavity). Id. at 33-85 through 33-86. It has a significant latency period, the exact time period of which is disputed by experts, but appears from current medical knowledge to average approximately thirty-five years. Id. at 33-85. Mesothelioma has been documented not only in asbestos workers but also in individuals who have had low-level exposure through, for example, living in asbestos mining towns or being married to an asbestos worker who carried fibers home on his or her clothes. Id. at 33-85 through 33-86. The disease is virtually always fatal within two years of diagnosis. Id. at 33-86.

Virginia courts, like many jurisdictions, acknowledge these distinctions by treating the diseases differently at trial. We have required plaintiffs in asbestosis cases to show repeated or prolonged exposure to asbestos. We have cited with approval a Georgia case that stated that asbestosis, "by definition, results only from an overexposure to asbestos." Norfolk S. Ry. v. Rogers, 270 Va. 468, 485, 621 S.E.2d 59, 69 (2005) (internal quotation marks and citation omitted). See also Norfolk & W. Ry. v. Ayers, 538 U.S. 135, 155-56 (2003) ("Asbestosis is a chronic, painful and concrete reminder that [a plaintiff] has been injuriously exposed to a substantial amount of asbestos.")

(internal quotation marks and emphasis omitted) (emphasis added).

On the other hand, we have recognized that a lesser degree of exposure may be sufficient to prove causation in mesothelioma cases. We considered a case in which a shipyard pipe-coverer developed mesothelioma and died after cutting and installing insulation products which contained asbestos, a process that created visible dust which he inhaled. Owens-Corning Fiberglas Corp. v. Watson, 243 Va. 128, 143-44, 413 S.E.2d 630, 639 (1992). The decedent had not been able to identify the brand or brands of asbestos products that he worked with prior to his death. We nonetheless determined that the circumstantial evidence that an asbestos product known as "Kaylo," manufactured by the defendant, was a prominently used product on the ship, combined with "medical evidence reveal[ing] that very limited exposure to asbestos fibers can cause mesothelioma," provided sufficient evidence to support a jury verdict against the manufacturer. Id. at 143, 413 S.E.2d at 639.

"One of the principal tests in determining whether a demand is single and entire, or whether it is several, so as to give rise to more than one cause of action, is the identity of facts necessary to maintain the action. If the same evidence will support both actions there is but one cause of action." Jones v. Morris Plan Bank, 168 Va. 284, 290-91, 191 S.E. 608, 609-10

(1937).  Here, the evidence set forth for asbestosis and mesothelioma claims, although containing some overlap, are markedly different.

Indeed, the only certain connection that these two diseases have is that they both stem from exposure to asbestos.  In the case at bar, the defendants are entirely distinct from those in the original asbestosis suit.  Given our current state of medical knowledge, however, it is not even possible to determine with certainty which disease stemmed from what asbestos exposure(s).  See Ford Motor Co. v. Boomer, 285 Va. ___, ___, ___ S.E.2d ___, ___ (2013) (this day decided).

Not all victims of asbestosis develop mesothelioma, but given their generally substantial periods of asbestos exposure, some do.  And this underscores the fundamental unfairness of deeming only a single cause of action to exist for all asbestos exposure cases:  while an individual who developed mesothelioma from only minimal asbestos exposure not sufficient to develop asbestosis has a recourse in the law for his or her mesothelioma diagnosis because that individual has not suffered a previous injury, an individual who first developed asbestosis due to his or her longer exposure to asbestos can recover for the effects of his non-malignant asbestosis but has no recourse in the law for his second, likely fatal disease.

As explained by the majority, the fundamental purpose of the subsections of Code § 8.01-249 is to create discovery rules. Generally, the intent of a discovery rule is to expand plaintiffs' access to legal remedies by deferring the statute of limitations to permit plaintiffs a fair chance to file suit when the onset of the harm would have been previously unknown to them:  that is, the purpose is to make the operation of the statute of limitations more appropriately fit the disease in the interest of fairness.

The effect of today's holding, however, is to contract that right to remedies for mesothelioma plaintiffs when the victims were previously diagnosed with asbestosis.  The relatively short latency period for asbestosis, the applicable two-year statute of limitations for personal injury, and the substantially longer latency period for mesothelioma virtually guarantee that individuals who have asbestosis will be barred from recovering damages should they subsequently develop mesothelioma.

Such a holding is contrary to the purpose behind the creation of a discovery rule.  Indeed, the enactment of the discovery rule provisions in Code § 8.01-294(4) is only one of several actions taken by the General Assembly that suggest an intent to treat asbestos-related diseases differently in order to produce a fair result.  See Code § 8.01-277(B) (permitting dismissal of actions in cases where process is not served within

34

one year, but excepting asbestos cases); Code § 8.01-335(D) (permitting cases where process is not served within one year to be struck from docket, but excepting asbestos cases).

Certainly, it is not the case that two asbestos-related diseases could <u>never</u> constitute the same cause of action. That is not the question before us. Should medical knowledge evolve to show that the harm occurred simultaneously, for example, the injuries would constitute the same cause of action. The Tenth Circuit put it well in a similar question certified to the Supreme Court of Colorado:

> We recognize that the relationship between asbestos-related pleural disease and asbestosis is a factual question. Because this is an appeal from a summary judgment and there is conflicting evidence in the record, it must be assumed that asbestosis is separate and distinct from and not a complication of asbestos-related pleural disease. We thus respectfully request the Colorado Supreme Court to focus on the narrow legal issue of whether a statute of limitations begins to run anew for a separate, distinct, and later-manifested disease caused by exposure to asbestos.

<u>Miller v. Armstrong World Indus., Inc.</u>, 817 P.2d 111, 113 (Colo. 1991) (quoting from the certification order and finding that the discovery of one separate asbestos related disease does not trigger the statute of limitations on a yet undiscovered disease).

Ever-evolving, fact-specific inquiries such as this are best left to expert testimony at trial. Given sufficient evidence to create an issue of fact, however, as to whether the

35

disease is distinct and not a mere complication of an earlier diagnosis, and provided that the other requisite elements have been pled, courts should consider mesothelioma as a distinct harm and a distinct cause of action.

Finally, permitting distinct causes of action would join a nationwide trend toward adopting a two-disease rule in the interest of equity and judicial economy. See Hagerty v. L&L Marine Servs., Inc., 788 F.2d 315, 320 (5th Cir. 1986) ("At least in the toxic chemical or asbestos cases, the disease of cancer should be treated as a separate cause of action for all purposes. There should be no cause of action or beginning of the running of limitations until the diagnosis of the disease. . . . A prior but distinct disease, though the tortfeasor may have paid reparations, should not affect the cause of action and damages for the subsequent disease."); Wilson, 684 F.2d at 120 (D.C. Cir. 1982) ("Concern for judicial economy also influences our decision. [I]f [an injured] person is told that another, more serious disease may manifest itself later on, and that a remedy in court will be barred unless an anticipatory action is filed currently, there will be a powerful incentive to go to court [and the] plaintiff's representative . . . may be motivated to protract and delay once in court so that the full story of his client's condition will be known before the case is set for trial."); Fearson v. Johns-Manville

Sales Corp., 525 F.Supp. 671, 674 (D.D.C. 1981) ("Under defendants' theory, plaintiffs would be forced to come into Court as soon as any minimal problem is diagnosed and seek speculative damages as to any other injuries that might develop in the future.  Plain common sense teaches that the law was never meant to be so unreasonable."); Miller, 817 P.2d at 113 (concluding, in answer to a certified question of law from the United States Court of Appeals for the Tenth Circuit, that one asbestos-related diagnosis does not trigger the statute of limitations for a distinct asbestos-related disease); Sheppard v. A.C. & S. Co., 498 A.2d 1126, 1134 (Del. Super. 1985) ("[L]atent disease cases justify a change in our perception and application of the statute of limitations to the end that a plaintiff with the misfortune of contracting more than one asbestos-related ailment over a long period of time not be without a remedy for the later and generally more serious and inherently unknowable claims."); Eagle-Picher Indus., Inc. v. Cox, 481 So.2d 517, 529-30 (Fla. Dist. Ct. App. 1985) (concluding that, because damages for enhanced cancer risk were not part of plaintiff's first award, a subsequent cause of action for damages due to cancer caused by asbestos was not barred); Va Salle v. Celotex Corp., 515 N.E.2d 684, 687 (Ill. App. Ct. 1987) ("To preclude recovery based upon the statute of limitations under these factual circumstances would . . . mean

that at some past moment in time, unknown and inherently unknowable even in retrospect, [plaintiff] was charged with knowledge of [asbestos-originating lung cancer].") (internal quotation marks and citations omitted); Wilber v. Owens-Corning Fiberglass Corp., 476 N.W.2d 74, 78 (Iowa 1991) ("The manifestation of asbestosis does not trigger the running of the statute of limitations on all separate, distinct, and later-manifested diseases which may have stemmed from the same asbestos exposure."); Smith v. Bethlehem Steel Corp., 492 A.2d 1286, 1296 (Md. 1985) ("[T]he starting point for Pierce was the medical evidence that lung cancer was a latent disease, separate and distinct from asbestosis. . . .  Our review of Pierce convinces us that the fact that the claimant there had not previously sued in tort for damages for asbestosis was not a factor material to the holding."); Larson v. Johns-Manville Sales Corp., 399 N.W.2d 1, 9 (Mich. 1986) ("The alternatives facing this Court are . . . to force all asbestosis victims . . . to sue for the possibility of contracting cancer, or . . . to allow these victims to wait until the discoverable appearance of cancer before bringing suit.  The latter alternative seems to us infinitely preferable."); Ayers v. Township of Jackson, 525 A.2d 287, 300 (N.J. 1987) ("[N]either the statute of limitations nor the single controversy rule should bar timely causes of action in toxic-tort cases instituted after discovery of a

disease or injury related to tortious conduct, although there has been prior litigation between the parties of different claims based on the same tortious conduct."); Fusaro v. Porter-Hayden Co., 548 N.Y.S.2d 856, 860 (N.Y. Sup. Ct. 1989) ("Implicit or explicit recognition of the second injury concept is evident in the rulings and jury charges of the Federal District Courts and State Courts in this jurisdiction as well. Juries . . . may not compensate asbestosis victims for increased risk of cancer because there is insufficient probability that the disease will develop. The language of these charges and rulings suggest that future actions will not be barred should cancer actually occur.") (internal citations omitted); Potts v. Celotex Corp., 796 S.W.2d 678, 685 (Tenn. 1990) (concluding, in response to a certified question of law from the United States Court of Appeals for the Sixth Circuit, that "discovery of a separate, independent, and distinct disease related to asbestos" does not constitute "discovery of other separate, independent, distinct, and latent asbestos-related diseases," and that such latent diseases are not barred by the statute of limitations by virtue of the prior discovery of a distinct disease.); Sopha v. Owens-Corning Fiberglas Corp., 601 N.W.2d 627, 630 (Wis. 1999) ("We hold that a person who brings an action based on a diagnosis of a non-malignant asbestos-related condition may

bring a subsequent action upon a later diagnosis of a distinct malignant asbestos-related condition.").

Judicial tribunals across the nation have faced a common question of equity: how to provide proper remedies for a generation of workers who are facing devastating diagnoses of latent asbestos-related diseases not previously accommodated by our legal system. In the absence of a clear legislative mandate, this Court has a duty to clarify how our long-standing principles of law apply to victims of asbestosis and mesothelioma. Our common law cause of action principles provide for distinct causes of action, and such an outcome supports both equity and judicial economy.

For these reasons, I would answer the certified question of law in the affirmative with respect to alternative [I] and in the negative with respect to alternative [II].

I respectfully dissent.